377 So.2d 1060 (1979)
Ranell Lynn JACKSON
v.
STATE of Mississippi.
No. 51444.
Supreme Court of Mississippi.
December 12, 1979.
Rehearing Denied January 9, 1980.
*1061 Robert N. Brooks, Carthage, for appellant.
A.F. Summer, Atty. Gen. by Wayne Snuggs, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, P.J., and BROOM and COFER, JJ.
COFER, Justice, for the Court:
Appellant, Ranell Lynn Jackson, was jointly indicted with another in the Circuit Court of Leake County, on a charge of armed robbery. On separate trial, she was convicted and sentenced to a term of twenty years in the penitentiary. From this conviction, she has appealed.
Here, she assigns three errors she insists were committed by the trial court:
1. The Circuit Court of Leake County committed error in overruling the appellant's demurrer to the indictment, for the reason that the indictment was not accompanied by the affidavit of the foreman of the Grand Jury as required by statute.
2. The Circuit Court of Leake County committed error in granting the instruction offered by the state, for the reason that it assumes that a crime was committed.
3. The Circuit Court of Leake County committed error in refusing instruction D # 1, or in not granting the appellant a new trial, for the reason that the verdict of the jury was against the overwhelming weight of the evidence and was contrary to the law.
The first of these asserted errors arises from an amendment to Mississippi Code Annotated, Section 99-7-9, effective July 1, 1977, eliminating the requirement theretofore contained in the statute that at least twelve grand jurors should be present when indictments on the grand jury were presented to the court, and instead, requiring that indictments "be presented to the court by the foreman of the grand jury or by a member of such jury designated by the foreman, with the foreman's name endorsed thereon, accompanied by his affidavit that all indictments were concurred in by twelve (12) or more members of the jury and that at least fifteen (15) were present during all deliberations...." The demurrer contained the one ground:
1. The indictment does not comply with the requirements of Section 99-7-9 of the Mississippi Code of 1972, as amended, in that it is not accompanied by the affidavit of the foreman of the Grand Jury as required by said statute.
The indictment blank containing the indictment has on its reverse side a form saying:
AFFIDAVIT
I, ____, am the foreman of the aforesaid grand jury. This indictment *1062 was concurred in by twelve or more members of the grand jury and fifteen or more members were present during the deliberations.
_______________________________
 Foreman of the Grand Jury
 SWORN TO . . .
This affidavit form was entirely blank, and the ground of demurrer would afford more trouble, if the statute required that it be executed. The demurrer went only to the indictment itself, Section 99-7-21, but the statute in its present form only requires an affidavit that all indictments then being returned meet the requirement of fifteen members present at the deliberations and twelve or more of them concurring in the finding of the indictment. This affidavit, we conclude, could be on each indictment or multiple indictments being returned therewith might be included in one affidavit.
The state contends, and we agree, that if there were the omission of the affidavit, such omission not appearing on the face of the indictment, such omission might be subject to a motion to quash. Section 99-7-23.
A suggestion of diminution of the record was granted and now appears as a part thereof. The material thus shows that, as appellant's demurrer was being considered, the court announced, "Let the record show that all Grand Jurors were in the Courtroom, including the Foreman, for the presentation of the indictment." There was also a nunc pro tunc order wherein the court concluded that the prescribed method of returning indictments is directory and not mandatory and, in the absence of a showing that the defendant had been prejudiced "as a result of the Foreman and entire Grand Jury being present in the Courtroom and making the report ... the demurrer is overruled... ."
There appears to be no prejudice resulting from the Foreman failing to complete the affidavit on the back of the indictment. (The proceedings, attended by the entire grand jury, at which the jury's final report was made, were also made a part of the diminution.)
... The presentment of the indictment in court in the presence of the other grand jurors implies a concurrence of the requisite number, and the statute is plain and unequivocal.
(Temple v. State, 165 Miss. 798 at 805, 145 So. 749 at 751).
Section 99-7-9 was considered en banc, resulting in decision in McCormick v. State, 377 So.2d 1070 (Miss. 1979). The decision on this assignment is in accordance therewith.
In finding the assignment without merit, we observe that, for aught appearing in the record, such statutory affidavit may have been filed.
The second assignment of error attacks the state's instruction as being faulty in assuming that a crime was committed.
The state requested an instruction, to which objection was made by the defendant; the court suggested an amendment, and defendant objected to the instruction in its amended form; and the court suggested a further amendment which was made. After this the record shows no further objection by defendant. The entire transaction concerning the instruction is as follows:
BY THE COURT: What do you say to this one?
BY MR. BROOKS: We object to that instruction for the reason that it assumes the guilt or the commission of the crime. The part that says, "... believe beyond a reasonable doubt that Ranell Lynn Jackson aided, abetted or assisted another one in so doing." That assumes that the crime was committed and leaves it up to the jury, the question of whether or not she assisted in the crime. Actually, the jury has got to decide first that the crime was committed, and then whether or not she assisted.
BY THE COURT: I think you need to amend your instruction to say this: "... or if you believe from the evidence beyond a reasonable doubt that she was present and aided and abetted or assisted another in so doing."
BY MR. BROOKS: We object to it as amended for the same reason.

*1063 BY THE COURT: Why don't you amend the instruction further, "... that the Defendant, Ranell Lynn Jackson, at the time and place testified to by the witnesses."
(Conclusion of proceedings in chambers on instruction.)
The state contends that the failure of the defendant, at the second amendment, to object to it in its amended form constituted a waiver, and it is not properly before this Court. Supreme Court Rule 42. This contention is well taken, we think, but an examination of the instruction as finally given reveals it to be free of the vice appellant ascribed to it.
The instruction (the only one given at the request of the state), says, as to liability, as follows:
The court instructs the Jury that if you believe from the evidence, beyond a reasonable doubt that the defendant, Ranell Lynn Jackson, took personal property belonging to Mrs. O.H. Blocker by putting Mrs. O.H. Blocker in fear of immediate injury to her person by the exhibition of a deadly weapon, (or that if you believe from the evidence, beyond a reasonable doubt that said defendant, was [at the time and place testified to,] present and aided, abetted or assisted another in so doing,) then it is your sworn duty to return a verdict of guilty of armed robbery... . (That within the parentheses but outside the brackets was according to the court's first suggested amendment, that within the brackets was in line with the court's last suggestion above.)
Appellant cites several cases holding that a crime had to be shown to have been committed in order to convict an accomplice to such crime. DeAngelo v. State, 187 Miss. 84, 192 So. 444, 447 (1939); Smith v. State, 237 Miss. 498, 115 So.2d 318, 323 (1959); and Ray v. State, 330 So.2d 580, 587 (Miss. 1976).
In the Ray decision, the state requested and was granted two instructions. The cause was reversed and, in doing so, we observed that:
... Both instructions are objectionable for the reason that they assume that the crime charged was committed by another. Under the facts of this case, before appellant could be convicted as an accessory before the fact, the burden is upon the state to prove beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis that the crime charged was committed by another, and to further prove beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis that the accused was present, consenting, aiding and abetting such person in the commission of the crime charged. Consequently, on retrial the jury should be so instructed. Smith v. State, 237 Miss. 498, 115 So.2d 318 (1959); and Wages v. State, 210 Miss. 187, 49 So.2d 246 (1950). (330 So.2d at 587).
We are of the view that the instruction charged the jury that if defendant, as principal, committed the armed robbery, or, as accessory thereto, participated in the commission of the crime, she was guilty thereof, and that the guides in the Ray case, supra, are satisfied.
In addition to this one instruction on behalf of the state, the defendant obtained an instruction setting forth elements of the crime of armed robbery and of the jury's duty with reference to the defendant as an accused accessory, and we conclude the jury was fairly instructed as requested by the parties.
The final assignment of error is that defendant should have been granted a peremptory instruction of not guilty, or her motion for new trial should have been granted, the verdict being contrary to the overwhelming weight of the evidence and of the law.
A composite view of the defendant's testimony and of Mrs. O.H. Blocker's testimony (the victim) disproves the assertions of this assignment, verifies the existence of a jury question of defendant's guilt or innocence, and shows the verdict of the jury was not against the overwhelming weight of the evidence.
*1064 The defendant, sixteen years old when the alleged crime took place on April 7, 1978, resided in Memphis, Tennessee, and had been dating one Eddie Gray, with whom she was jointly indicted herein. Gray was coming from Memphis to see his brother Ozzie Gray, and wanted her to come with him. They did not go immediately to Ozzie's house, but rode around for awhile after arriving in the area, and she fell asleep. When she awoke she told Gray she was hungry, and told him to stop at a store. He said, "I'll stop at Mrs. Blocker's store," and did, and she went into the store. Inside, she looked around for some canned meat which she did not find. She then went to the cake counter and got a cake, then went to the drink box where, having difficulty opening it, Mrs. Blocker came and helped her. The defendant said she asked Mrs. Blocker if she had a Mountain Dew drink, and got a drink of some kind. She went up to pay for it, and had nothing but a $5 bill or a $10 bill, and gave Mrs. Blocker the smaller bill.
According to the victim, the grocery store of Mrs. Blocker was a small one, situate in a rural area of Leake County, which she and her husband (deceased) had operated for thirty years. The store was well lighted with a long light over the counter. About seven p.m. on April 7, 1978, defendant, not of Mrs. Blocker's acquaintance, entered the store. Mrs. Blocker spoke to her, and was not sure she returned the greeting. Defendant went the length of the store, where there was a bread rack, including a place for cakes and cookies. Defendant looked over at Mrs. Blocker and continued to look, so Mrs. Blocker went from behind the counter, and told her the cakes had advanced in price, to which defendant made no reply. Mrs. Blocker continued,
... I walked the length of the store and come behind the counter, and there's a refrigerator there, and I come on around, and then she left there and went on over on the other side of the store where there's a freezer, and back of that freezer is paper, toilet tissue, paper towels, and all that kind of stuff. Then she stood there, and there's a window there, and I didn't know whether she looked out the window, or looked at me or what ... and then she come on over there, and I said, "Are you by yourself?" She said, "yes." ... She was acting so strange.
She paid for the merchandise with a dollar for the cake and drink, and Mrs. Blocker was preparing the change, when someone (it was Gray) came in. According to defendant, he had a pistol in his hand and a paper sack over his head; she grabbed the money back, backed up, was scared, and left the merchandise there. According to defendant, she, going out, asked Gray what he was going to do, and he told her not to ask him a question, but to keep her mouth shut.
He had the gun in Mrs. Blocker's back before she knew what had happened. He said, "This is a stickup," and tied her hands behind her back with a necktie; she pleaded that he take the money and go without tying her up or taking her; he said, "you are going with us." (Emphasis added). Outside the store, she sat on the ground and Gray beat her with the pistol; during which time, the defendant was going to the pickup. The last the victim saw of her was as she was getting into it. After further torture, Gray jumped in the pickup and they left.
Defendant's version was that she went, on his command, to get back in the pickup, telling Gray "don't." She heard Mrs. Blocker telling Gray not to hurt her, but to take the money.
They drove hurriedly away, pursued by a friend of Mrs. Blocker's granddaughter, who had arrived on the scene as they drove away. As Gray was beating and dragging Mrs. Blocker, he had a cigar box under his arm. They left together, money in the cigar box being poured by Gray into defendant's pocketbook. As the pursuit continued, Gray threw the cigar box out, then he threw out the purse and the pistol.
On a dirt road, they abandoned the pickup, Gray having locked it, and Gray, followed by defendant, started running toward and reached Ozzie's house. Defendant *1065 and Gray returned to Memphis that night.
From this proof clearly before the jury, we are of the opinion that the guilty verdict by the jury was warranted, was not contrary to the overwhelming weight of the evidence, or of the law, and should be upheld. Accordingly, we find the final assignment of error to be without merit.
The cause is affirmed.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, BROOM and BOWLING, JJ., concur.
SUGG, J., specially concurs.
PATTERSON, C.J., and LEE and WALKER, JJ., dissent.
SUGG, Justice, specially concurring:
I concur in the results reached in this case, but disagree with the following statement:
This affidavit, we conclude, could be on each indictment or multiple indictments being returned therewith might be included in one affidavit.
In my opinion, a separate affidavit should be filed for each indictment returned by a grand jury.
LEE, Justice, dissenting:
I think the trial court erred in overruling the demurrer, and, therefore, I dissent from the majority opinion.
The statute, which provides for reporting indictments to the trial court, remained unchanged from 1857 until the amendment by Ch. 307, § 1 [1977] Miss.Gen.Laws 433, effective July 1, 1977, except for an amendment in 1964 requiring that a copy of the indictment be served upon the defendant prior to arraignment. The 1857 statute and the two amendments constitute the law of Mississippi on the subject, have supplanted the common law, and are in derogation of same. A strict construction requires that the provisions of the present statute [See Appendix] be expressly followed.
The obvious purpose of the statute is, and to me, the intent of the Legislature was, (1) to provide a method for returning indictments to the trial court without the necessity of grand jury members being present, (2) to insure that fifteen (15) members of the grand jury were present when the case was being presented to, and considered by, the grand jury, and (3) to make certain that no less than twelve (12) members of the grand jury voted for a true bill of indictment.
The formal parts of the indictment were printed, and included the words "a true bill." Under same was a line with the words "District Attorney" and "Foreman of the Grand Jury" below it, indicating a place for the district attorney and the foreman to sign. Next appeared the affidavit to be executed by the foreman:
"AFFIDAVIT:
I, ____, am the foreman of the aforesaid grand jury. This indictment was concurred in by twelve or more members of the grand jury and fifteen or more members were present during the deliberations.
___________________________
 Foreman of the Grand Jury
Before me personally appeared ____ the foreman of the aforesaid grand jury who made the above affidavit for the reasons stated therein.
SWORN TO AND SUBSCRIBED by me, this the ____ day of ____, 19__."
The above mentioned printed parts of the indictment are as much a part of it as the names of the defendants, the date of the crime and the charge of the indictment, which are typed into the instrument. I do not believe that any court would have the temerity to decide that failure of the foreman of the grand jury to endorse the instrument as a true bill would not vitiate the instrument. The statute requires the indictment to be endorsed by the grand jury foreman and it likewise requires the foreman, or person designated by him, to execute the affidavit.
The question was properly raised by demurrer because the defect (lack of execution of the affidavit) appeared on the indictment *1066 itself. When the defect does not appear on that instrument (dehors instrument) the proper procedure for raising the question is by motion to quash the indictment. Evidence is not adduced on consideration of a demurrer while it must be on motion to quash. The present case is distinguished from Temple v. State, 165 Miss. 798, 145 So. 749 (1932). When Temple was decided, the statute was in the same form as when first enacted in 1857. The Court had no such question before it then as that presented by the indictment here.
The State apparently recognized the fatal error assigned by appellant and attempted to cure the same by filing a suggestion of diminution of record and attached thereto Exhibits A, B and C. Exhibit A was designated "Supplemental Transcript," and contained a statement by the trial judge on November 16, 1978, as follows: "Let the record show that all grand jurors were in the courtroom, including the foreman, for the presentation of the indictment."
Exhibit B was a nunc pro tunc order by the trial judge dated April 30, 1979, five (5) months after the adjournment of the November, 1978 Term of court and entered at the April, 1979 Term. Such order simply recited that the appellant declined to show proof of prejudice in the return of the indictment and in failure to file the affidavit on the back of the indictment. The order was directed to be filed and a copy forwarded to the Mississippi Supreme Court as a part of the record, since the case was on appeal to this Court.
Exhibit C was a supplemental transcript which indicated that on November 15, 1978, the grand jury returned into open court a final report and bills of indictment. Nowhere in that supplemental transcript, or in any part of the record, is there any indication that an affidavit was executed as required by the statute, or that fifteen (15) members of the grand jury were present during the consideration of the present case, or other case, and nowhere does it appear that twelve (12), or more, members of the grand jury voted for the true bill of indictment. In my view, the exhibits forwarded to this Court, pursuant to the suggestion of diminution of record, did not cure the error committed by the trial court in failing to comply with the statutory method of reporting true bills of indictment to the court.
The majority opinion suggests that the statute only requires an affidavit that all indictments then being returned meet the requirement of fifteen members present at the deliberations and twelve or more of them concurring in the finding of the indictment and that the affidavit could be on each indictment, or one affidavit might cover multiple indictments being returned. The opinion further recites that "for aught appearing in the record, such statutory affidavit may have been filed." It is obvious to me that, had there been one affidavit covering all the indictments, the State, in suggesting the diminution of record certainly would have included the affidavit as an exhibit thereto, along with the other exhibits. Furthermore, when the State incorporated a blank affidavit on the indictment, to be executed by the foreman, it selected that method of complying with the statute and it became a part of the indictment.
We should apply judicial construction, not legislation, to the statute. In my opinion, the demurrer should have been sustained. The State could have amended the indictment by having the affidavit executed by the foreman. The demurrer having been overruled, and the indictment not having been amended, I think that the trial court committed reversible error and that the cause should be reversed and remanded.
PATTERSON, C.J., and WALKER, J., join this dissent.

APPENDIX
"§ 99-7-9. Presentment  entry on minutes of court  warrant to issue  copy of indictment to be served on defendant.
All indictments and the report of the grand jury must be presented to the court by the foreman of the grand jury or by a member of such jury designated by the foreman, with the foreman's name endorsed thereon, accompanied by his affidavit *1067 that all indictments were concurred in by twelve (12) or more members of the jury and that at least fifteen (15) were present during all deliberations, and must be marked `filed,' and such entry be dated and signed by the clerk. It shall not be required that the body of the grand jury be present and the roll called. An entry on the minutes of the court of the finding or presenting of an indictment shall not be necessary or made, but the endorsement by the foreman, together with the marking, dating, and signing by the clerk shall be the legal evidence of the finding and presenting to the court of the indictment. Unless the party indicted be in custody or on bond or recognizance entry of the indictment otherwise than by its number shall not be made at any time or for any purpose on the minutes or on any docket, nor shall any publicity be given to the fact of the existence of the indictment; but it shall never be made an objection to the indictment that it was improperly entered on the minutes or docket. A warrant for the person indicted shall immediately issue and be served on the person so indicted. After the arrest of the person indicted, and prior to arraignment, a copy of the indictment shall be served on such person." Miss. Code Ann. § 99-7-9 (Supp. 1977).
NOTE: The emphasized portion of the above statute constitutes the 1977 amendment.