DE ANGELO *v.* STATE.

(Division B. Dec. 11, 1939.)

[192 So. 444. No. 33820.]

Otto Karl Wiesenburg, of Pascagoula, and Mize, Thompson & Mize, of Gulfport, for appellant.

**W. D. Conn, Jr.**, Assistant Attorney-General, for appellee.

Argued orally by **Robert W. Thompson, Jr.**, for the appellant, and by **W. D. Conn, Jr.**, for the State.

**McGehee, J.**, delivered the opinion of the court.

This appeal is from a conviction of the appellant as an accessory before the fact to the crime of robbery; whereupon he was sentenced to serve a term of five years in the state penitentiary.

On Saturday night, February 4, 1939, at about eleven o'clock, one Billy Moody, held up and robbed, by the use of a pistol, Grover C. Carter, in his store located in the Wade community, about twenty miles north of Kreole, in Jackson county; and took, stole and carried away about $35 in money, and certain checks. No one else was present in or about the store building at the time of the robbery except Mr. and Mrs. Carter and the said Billy

Moody. He was later arrested, charged with the crime, and placed in jail at Gulfport in Harrison county, from whence he escaped; but thereafter surrendering himself to the officers, he was placed in the Jackson county jail shortly before the Circuit Court convened in that county on May 15, 1939. While in custody he had learned from other prisoners, or from some source which, upon the trial of the appellant, he refused to disclose, that the "others" (meaning the appellant and Harold Goff, who had carried him by automobile late that Saturday evening to a place near the scene of the crime) had "squealed," the inference being that he had learned that the officers had ascertained through these two parties the fact that he, Moody, had been left by them near the scene of the crime a few hours prior to the robbery.

It appears that he then implicated both the appellant and Harold Goff in the crime, claiming that they both took him up there, and later returned in the car for him, pursuant to an agreement that they should meet him at a certain school-house near the store after one o'clock that night, and by further claiming that the three of them divided the money and checks taken from the store, at about five o'clock Sunday afternoon, the day following the robbery.

It further appears that the appellant and Goff worked at a paper mill at Kreole from seven that Saturday evening until one o'clock in the morning; that as a matter of fact they did take Moody in the appellant's automobile from Moss Point to the vicinity of the crime at about four or five o'clock that Saturday evening, and also that the appellant and Goff later drove back to the Wade community, to a point about a mile and a half north of Carter's store.

The appellant contends that he and Goff took Moody to the vicinity of Carter's store at Goff's suggestion, and that Moody paid the appellant a dollar for his transportation, claiming that he was going from there to McLain, Mississippi, later that night; that he knew nothing of

the proposed robbery; that when he and Goff got off from work at the paper mill at one o'clock that night, he went to his automobile and found Goff seated in it, and that Goff thereupon suggested that they go back to the Wade community, where he thought there was a dance still in progress; that they went back up there for that purpose, and not for the purpose of meeting Moody; that en route to the dance hall they passed Carter's store and the school-house, but did not try to find Moody; that upon their return they stopped at Carter's store, where the sheriff and his deputy were investigating the robbery, and appellant borrowed Mr. Carter's flashlight to see how to adjust the lights on the automobile, which were flickering and giving trouble; that Goff, who lived in that community, wanted appellant to stay and spend the night with him at his father's home, but instead they returned to Kreole that night, going back Sunday afternoon to visit in Goff's home, and at his uncle's, returning to Kreole at about four o'clock that afternoon; that from Kreole appellant drove to Grand Bay, Alabama, twenty miles away, had his car lights fixed at a filling station not later than 4:30 P. M., and remained at Grand Bay until 7:30 that evening, at the home of Mrs. Minnie Mc-Clinton, where he had a date with her daughter, whom he brought back to Kreole that night, she being employed at that place; and that he was therefore not in the vicinity where Moody and Goff claimed that the three of them had divided the proceeds of the robbery on Sunday afternoon, between five and six o'clock according to Moody, and as late as six o'clock according to Goff.

The appellant was arrested on May 10th, under a warrant issued by a justice of the peace on an affidavit charging him with the crime, and on May 12th, which was only three days prior to the convening of the Circuit Court in Jackson county, he employed an attorney, and demanded a preliminary trial. His request for a preliminary hearing was denied, for the reason that the state was not ready; but an agreement was reached whereby he was

released under a $2,000 appearance bond to await the action of the grand jury which was to convene on the following Monday. The bond was tendered and accepted on May 13th, before the grand jury convened on the 15th. This procedure is mentioned for the reason that the appellant was indicted jointly with Moody for robbery with firearms under one indictment, and separately as a principal under another, on the theory that he was an accessory before the fact to the crime, and a motion to quash the indictments was made, followed by a plea in abatement, on the ground that the appellant had been denied a preliminary hearing, and the charge against him was still pending in the justice of the peace court at the time the indictment was returned; and the overruling of the motion and plea is here assigned as error.

We are of the opinion that the giving of the bond by the appellant, to await the action of the grand jury, amounted to a discontinuance of the prosecution in the justice of the peace court, and a waiver of the appellant's right, under section 1230, Code of 1930, to be taken before the officer for an examination of his case. Hence, we are of the opinion that no error was committed by the trial court in overruling the plea and the motion to quash the indictments.

It seems that the indictments against the appellant were presented partly upon the testimony of Harold Goff, who in testifying as a witness against the appellant, stated that he went before the grand jury voluntarily, and without any process having been issued for him as a witness. Goff then testified on the trial that he and the appellant took Moody to the scene of the crime for the purpose of enabling him to commit the robbery, and that they returned for Moody after one o'clock that night; and that although they didn't find Moody until Sunday afternoon, the three of them divided the money and checks at about six o'clock Sunday afternoon. He also testified that when he and the appellant returned to the Wade community that night, after the robbery, drove be-

yond Carter's store, and passed the school-house, they were not looking for Moody; then later swore that they went to the school-house, looked for him, and that he didn't come. He admitted that Moody paid the appellant a dollar on the way there, in the first instance. He first testified that they "picked up" Moody Sunday afternoon in an "old bunk hall" near the paper mill, to go and divide the money, and later swore that they overtook him on the highway, when he got in the car; whereas, Moody swore that he was at home asleep when they came for him to go and divide the money. Goff talked to the appellant's attorney after having gone before the grand jury, stating that the appellant was not implicated in the robbery; that he didn't know that Moody intended to stage the holdup; that Moody paid the appellant a dollar to take him up there; and deliberately withheld from the attorney any contention that the appellant participated in the division of the proceeds of the crime. Moreover, he made other statements which led the attorney to believe that his testimony would not be at variance with the appellant's version of what had occurred. Therefore, the attorney, who was prepared to show that appellant was at work at the time of the robbery, was not guilty of any lack of diligence in not having Mrs. McClinton, the filling station operator, and a drug store clerk from Grand Bay, Alabama, present to contradict Goff as to the whereabouts of the appellant at the time of the alleged division of the money on the next evening after the robbery, all of whom made affidavits in that behalf of a motion for a new trial. His first duty was to locate the witness, Miss McClinton, who was within the jurisdiction of the court, and to have her present the next morning to testify. This was done, but it is to be presumed that since the appellant did not then know the names of some of those witnesses in Alabama, it would have been necessary for the attorney to go to Grand Bay to investigate the matter of whom he should arrange to have come to court.

It is true, as contended by the state, that this was not newly discovered evidence, within the legal meaning of that term; and it may be conceded that the action of the trial court in overruling the motion for a new trial on that ground, considered alone, would not constitute reversible error. But when considered in connection with the fact that two self-confessed accomplices contradicted each other in many material particulars in regard to the appellant's participation in the crime, the fact that Moody, who admitted that he was supposed to have a bad reputation with those who knew him, was not corroborated by anyone in the store where he claims that appellant purchased cartridges for the holdup while they were en route to the scene of the crime, together with the fact that Goff appears to have escaped indictment by reason of having voluntarily testified before the grand jury, and then later admitted that he had not told the appellant's attorney the truth about the matter, thereby deliberately misleading the attorney in his preparation for the trial, we are of the opinion that the court below, in the exercise of his authority, section 592, Code of 1930, should have sustained the motion for a new trial upon the showing made, and in view of all the facts and circumstances disclosed by the evidence.

Since the case is to be remanded for a new trial, it should be observed that the instruction for the state here complained of as error is subject to the objection that it does not sufficiently require the jury to believe, as a condition precedent to its right to convict appellant as an accessory before the fact, that Moody placed Grover Carter in fear of immediate injury to his person, or took his money by violence, so as to render him guilty of robbery.

The appellant is a young man, about twenty years of age, a high school graduate, and it appears that he has enjoyed a good reputation. Complaint is made of the ruling of the court below to the effect that the proof of good character and reputation should be limited to the

trait of peace or violence. We think, however, that he was entitled to likewise prove his previous general reputation for honesty and integrity, since the crime of robbery involves that issue, as well as the issue of peace or violence. However, the question to which the state's objection was sustained was not properly directed to that inquiry as the record now stands.

For the reasons hereinbefore stated the cause is reversed and remanded.

Reversed and remanded.