449 So.2d 766 (1984)
Arletha WINTERS
v.
STATE of Mississippi.
No. 54093.
Supreme Court of Mississippi.
February 15, 1984.
*767 Charles S. Head, Lee B. Agnew, Jackson, for appellant.
Bill Allain, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
On December 9, 1981, Thomas John McGee, then aged sixteen, made a bungling attempt to rob at gunpoint the Tinnin Road Grocery in rural Hinds County. In due course, Arletha Winters, defendant below and appellant here, and McGee were formally charged with armed robbery in indictments returned by the Hinds County grand jury. After McGee entered a plea of guilty, Winters was put to trial on the morning of February 23, 1982. After hearing all of the evidence and receiving the instructions of the court and the arguments of counsel, the jury found Winters guilty of the charge of armed robbery. The circuit court thereupon imposed a sentence of twenty-five years within the custody of the Mississippi Department of Corrections.
Displeased with the outcome of the proceedings below, Winters has appealed. We affirm.

II.
Arletha Winters, Thomas John McGee and one Betty Brown went to the Tinnin Road Grocery on December 8, 1981. The trio remained in the store for about half an hour on that day, playing pool and pinball in a back room. Mrs. Winnie Kelly, one of the proprietors of the store, remembered both Winters and McGee and was able to identify them at trial. Mrs. Kelly also remembered that the trio was traveling in a maroon Grand Prix automobile.
On the following day, December 9, 1981, Winters, McGee and Brown returned to the store at approximately 12:30 p.m. At that time, McGee walked into the store and pulled a gun on Mrs. Kelly, the sole store attendant present at the time. Mrs. Kelly yelled to her husband who was in the back. When he answered, she yelled back that there was a boy in the store with a gun on her. This apparently scared McGee, and he ran out of the store empty-handed.
Witnesses testified that McGee ran toward and got into the back seat of the same maroon Grand Prix automobile that had been there the day before. The car drove off slowly.
Thomas McGee testified that Arletha Winters had devised the entire operation. He said that Winters had arranged for the use of Ruby Brown's automobile that day. He stated that Arletha Winters, who was *768 five years his senior, planned the robbery and that she furnished the gun with which he attempted to rob the Tinnin Road Grocery. He testified that Winters was in the automobile at the time of the robbery attempt. When he got back to the car, McGee said that Winters asked him what had happened, and he told her that the robbery attempt had failed. The three then drove back to Jackson, and Winters took McGee home.
At trial, Winters vehemently denied any involvement in the robbery attempt, although in a post-arrest statement to law enforcement officers she acknowledged her presence at the scene. She suggested that McGee had implicated her in order to secure a more favorable treatment from the state for his involvement in the robbery. To be sure, the most substantial evidence implicating Winters was the testimony of McGee. For reasons set forth below, however, the McGee testimony was substantial and not inherently incredible. Suffice it to say that the jury resolved all credibility issues against Winters as it returned a verdict of guilty as charged in the indictment.

III.

A.
Winters charges here that the trial court improperly restricted her efforts to offer character evidence. The challenged rulings occurred as follows:
First, Ruby Brown, a friend of Winters, was asked:
Now, Mrs. Brown, do you know the general reputation of Arletha Winters in the neighborhood or in the community where she resides or has resided for commission of crimes such as she is being charged with here?
The state objected to this question, and the objection was sustained.
Second, Ruby Nell Winters, the mother of the defendant, was asked on direct examination:
Do you know her general reputation for the commission of crimes such as she's charged with here?
Again, the state objected, and again the objection was sustained.
On this appeal, Winters charges that each of these rulings was error, that by virtue of each of these rulings she was improperly limited in her offer of character evidence and, as a result thereof, the case should be reversed and remanded for a new trial.
During the direct testimony of Ruby Brown, defense counsel inquired regarding Winters' reputation in the community in which she lives for peace or violence. The witness answered that she knew of Winters' reputation in this regard and that it was good. When the same matter came up on the examination of Ruby Nell Winters, defense counsel objected strenuously to being limited to a question regarding Winters' general reputation in the community in which she lives for peace or violence. Defense counsel argued:
I'm saying it doesn't have to be peace and violence. As a matter of right, she is entitled to her general reputation of character pertaining to traits of the type involved in the charges against her in this case.
The trial judge reiterated his ruling sustaining the objection to the form of the question propounded to Ruby Nell Winters as quoted above. Defense counsel declined to rephrase the question.
The defendant in a criminal prosecution, as a matter of right, may introduce evidence of his or her own good character. Rosser v. State, 230 Miss. 573, 577, 93 So.2d 470, 471 (1957). Proof of a character trait, however, may not be made by proof of specific past actions. The defendant is limited to offering testimony as to general reputation. Kearney v. State, 68 Miss. 233, 237-238, 8 So. 292, 293 (1890). Quoting from the Kearney case, this Court in Allison v. State, 274 So.2d 678 (Miss. 1973) stated:
One accused of crime may introduce evidence of his character such as would *769 make it unlikely that he would commit the crime with which he is charged, and having thus put his character in issue, it may in turn be attacked by the state. But neither the accused or the state may resort to particular facts to establish or refute the character thus put in issue. The reputation of the person, at most, what particular witnesses believe of him from his course of life, define the limits of the rule. One who puts his character in issue is supposed to be prepared to defend it by showing such habits as to generally impress the community or particular persons who knew him favorably. 274 So.2d at 682-83.
In Westbrooks v. State, 76 Miss. 710, 25 So. 491 (1892), the Court wrote:
Evidence of general character is admissible in criminal cases; but the evidence relating to such general character should be confined to the proper trait involved in the nature of the charge against the defendant.
76 Miss. at 713, 25 So. at 492.
Where the charge is armed robbery, the two character traits implicated are the accused's reputation for peace or violence as well as his or her reputation for truth and veracity. In DeAngelo v. State, 187 Miss. 84, 192 So. 444 (1939), the Court made this point unequivocally clear:
The appellant is a young man, about twenty years of age, a high school graduate, and it appears that he has enjoyed a good reputation. Complaint is made of the ruling of the court below to the effect that the proof of good character and reputation should be limited to the trait of peace or violence. We think, however, that he was entitled to likewise prove his general reputation for honesty and integrity, since the crime of robbery involves that issue, as well as the issue of peace or violence.
187 Miss. at 95-96, 192 So. at 447.
Summarizing these authorities, the accused in a criminal case in this state may offer evidence of his or her general reputation in the community in which he or she lives with respect to every general character trait substantially related to the nature of the charges in the indictment. On the other hand, counsel for the accused may not ask a witness about the accused's reputation with respect to the commission of the crime he or she is charged with. It is proof of the character trait which is admissible, not proof of specific acts. More precisely, it is proof of the accused's general reputation with respect to a character trait, not her reputation for the commission of specific acts (or specific crimes).
The reason for the rule is, we think, apparent. In a hypothetical armed robbery prosecution, the accused may well be a first offender. He may never have committed a robbery, armed or otherwise. A character witness asked regarding the accused's general reputation for the commission of crimes of the sort charged in the indictment would have to reply that his reputation was good. This would be so, even though the accused had a horrible reputation for general honesty and peaceableness. The reason why the question, to-wit:
Do you know her general reputation for the commission of crimes such as she's charged with here?
is objectionable is that, as phrased, it is extremely unlikely to elicit probative evidence regarding the accused's propensity to commit the crime charged in the indictment. Moreover, an answer favorable to the accused could well be wholly consistent with a universally bad reputation with respect to those general character traits substantially related to the nature of the charges in the indictment.
Character evidence at best is of minimal probative value. If it is to be of any value at all, it must go to the heart of those character traits implicated by the offense charged. It must give the trier of fact a significant insight into the character of the accused insofar as it would make it unlikely that he would commit the crime with which he has been charged.
In this case, Winters called four witnesses Ruby Brown, Ruby Nell Winters, Isaiah *770 Howard, and Eula Walton  each of whom testified before the jury that he or she knew of Arletha Winters' general reputation for truth and veracity and that her reputation in that regard was good. In addition, Ruby Brown was allowed to testify that she knew Winters' reputation for peace or violence in the community in which she lived and her reputation in that regard was good. The other three could have been asked questions of this general type had defense counsel so desired.
Obviously, defense counsel is not restricted to the use of the words "peace or violence" and "truth or veracity". There is no magic in those words. Any words which carry the same general meaning and refer to the same general character traits may be employed.
Winters, however, did not seek to prove her reputation with respect to character traits only. She sought to prove her reputation with respect to the commission of specific crimes, to-wit: armed robbery. The trial court properly sustained the objection. We reject the assignment of error.

B.
Winters next assigns as error the trial court's ruling allowing testimony regarding other crimes with which she had been charged, but not convicted, to be presented to the jury. Winters further argues that her motion for a mistrial after this evidence was offered should have been sustained.
There is no question but that substantial evidence of other criminal activity on the part of Arletha Winters was presented to the jury. This testimony related to other armed robberies, of none of which she had been convicted. Ordinarily this type of testimony is inadmissible. The issue here, however, is whether it was invited by defense counsel via his cross-examination of Thomas McGee, the accomplice.
McGee was the chief state witness against Winters. In an attempt to impeach the credibility of McGee, apparently by implying to the jury that McGee was trying to shift the blame to Winters (to save his own skin or for whatever reason) and that his testimony was therefore incredible and unworthy of belief, the following colloquy occurred:
Q. What did Arletha tell you? She told you that you rob the people and give her all the money?
A. Yes, sir.
Q. You are telling us the truth about that, too, aren't you?
A. Yes, sir.
Q. What did you do with the money from the other people that you robbed?
A. Gave it to Arletha Winters.
Q. You gave all that to Arletha, too?
A. Yes, sir.
The fact that Winters and McGee had participated in eight other robberies was thus clearly before the jury. That fact was put before the jury by the defense. Then, on redirect examination, the state proceeded to drive a truck through the hole thus opened in Winters' defenses. With little mercy, the state pounded home the idea that the robbery in question was only one of many committed by McGee and Winters, each time using the same modus operandi.
Evidence of prior offenses committed by a defendant, not resulting in convictions, is generally inadmissible either for impeachment purposes or as part of the state's case in chief. Gray v. State, 351 So.2d 1342 (Miss. 1977) (in the guilt phase of a capital murder trial, it was error to allow the state to show that the defendant was on parole for a prior offense); Mills v. State, 304 So.2d 651 (Miss. 1974), (admission of testimony of other drug deals in a trial for delivery of marijuana held reversible error); Allison v. State, 274 So.2d 678 (Miss. 1973), (admission of evidence of other crimes to impeach defendant charged with assault and battery with intent to kill held to be reversible error). Nothing we say here should be taken to signal a retreat from this well-settled rule.
On the other hand, where the defense attorney inquires into a subject on cross-examination of the state's witness, the prosecutor on rebuttal is certainly entitled to elaborate on the matter. For example, *771 in Jefferson v. State, 386 So.2d 200 (Miss. 1980), the defendant's attorney on cross-examination asked the prosecutrix in a rape case regarding a prior rape the defendant had allegedly committed. On redirect, the prosecuting attorney developed the details of the prior incident. On appeal, we held that evidence of the prior rape, though otherwise inadmissible, could properly be presented by the prosecution where the defendant has opened the door. See Simpson v. State, 366 So.2d 1085, 1086 (Miss. 1979); Johnson v. State, 260 So.2d 436, 438 (Miss. 1972). When allowing this sort of testimony, however, the trial judge should be careful to assure that the prosecution does not go beyond the scope of the "invitation" extended by defense counsel. Based upon our careful review of the transcript in this regard, we find that the invitation was not exceeded. Accordingly, this assignment of error is denied.

C.
Finally, Winters challenges the sufficiency of the evidence to sustain her conviction. To be sure, the evidence was sharply disputed. The evidence offered by Winters was not inherently incredible. Still the jury chose to believe the state's version of the facts.
The jury's verdict of conviction no doubt substantially rests on the testimony of her accomplice, Thomas McGee. We have in numerous cases held that a conviction may be supported by the testimony of an accomplice, even when it is uncorroborated.[1] See, e.g., Oates v. State, 421 So.2d 1025, 1031 (Miss. 1982); Catchings v. State, 394 So.2d 869, 870 (Miss. 1981); Jones v. State, 381 So.2d 983, 988 (Miss. 1980). We only require that the accomplice's testimony be reasonable and not improbable, self-contradictory or substantially impeached. Mason v. State, 429 So.2d 569 (Miss. 1983); Pearson v. State, 428 So.2d 1361, 1363 (Miss. 1983). Consistent with these statements of law and all of our cases on this subject, the testimony of Thomas McGee was more than sufficient.
Under our system, the jury is charged with the responsibility for weighing and considering conflicting evidence and the credibility of witnesses. E.g., Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980); Pearson v. State, 428 So.2d 1361, 1363 (Miss. 1983). Once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that under the evidence, taken in the light most favorable to the verdict, no reasonable hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.
Similarly, we will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. See Rule 5.16(1) and (2), Uniform Criminal Rules of Circuit Court Practice; Pearson v. State, supra, 428 So.2d at 1364. Because there is in the record before us substantial credible evidence suggesting Winters' guilt, the circuit court correctly denied Winters' motion for a new trial.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
NOTES
[1] As indicated above, Winters told law enforcement officers that she was in the maroon Grand Prix at the time and on the occasion in question. She denied knowing what McGee was doing when he went in to the store. Winters' admission that she was at the scene with McGee and Brown partially corroborates McGee's testimony.