# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-KA-00470-SCT

*ROBERT STRAHAN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/27/96 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 7/23/98 |
| MOTION FOR REHEARING FILED: | 7/28/98 |
| MANDATE ISSUED: | 10/22/98 |

**BEFORE PRATHER, C.J., ROBERTS AND MILLS, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## I. STATEMENT OF THE CASE

¶1. This case arises from the April 28, 1995, shooting death of seventeen-year-old Jason Brown. The record reflects that Jason Brown and Patrick Holiday left the Metrocenter Shopping Mall that night in Brown's blue Malibu. The Malibu had very expensive hubcaps and a good stereo system.

¶2. The appellant, Robert Strahan, was riding in the backseat of a maroon Cougar. The Cougar was driven by Patrick Cavett, who followed Brown's car "bumper-to-bumper" for several miles, while flashing the headlights. Glynn Stevens and Calvin "Kenyatta" Shelton were also riding in the Cougar. Holiday knew Shelton from church and school.

¶3. Brown stopped at an intersection. Holiday got out of Brown's car and asked "why the [expletive]" they were being followed. Several shots were fired from the maroon Cougar. Holiday, who had been shot in the leg, ran back to Brown's car. Cavett drove the Cougar away from the scene. Brown, who never left his vehicle, had been fatally shot in the head.

¶4. On August 8, 1995, Robert Strahan and three others (Calvin Shelton, Glynn Stevens, and Patrick Cavett) were indicted for Brown's murder in the First Judicial District of the Hinds County Circuit Court. Strahan was arraigned August 31, 1995. On October 25, 1995, Strahan moved to sever the cases, but the motion was denied December 4, 1995.

¶5. However, as an alternative to severance, the trial judge granted Strahan's motion *in limine* prohibiting any testimony on Strahan's exercising his right to remain silent during the police investigation and at trial. In February, 1996, Strahan, Cavett and Stevens were tried together, and co-indictee Shelton testified against them. Strahan was convicted of murder and sentenced to life in prison. His subsequent motion for judgment not withstanding the verdict (JNOV), or, in the alternative, a new trial, was denied April 5, 1996. On appeal, Strahan raises the following issues for consideration by this Court:

**A. WHETHER THE TRIAL COURT ERRED IN DENYING A SEVERANCE?**

**B. WHETHER THE CONVICTION WAS SUPPORTED BY SUFFICIENT EVIDENCE?**

**C. WHETHER THE EVIDENCE ADEQUATELY SUPPORTED A MURDER CONVICTION AS OPPOSED TO MANSLAUGHTER?**

**D. WHETHER THE COURT ERRED IN ALLOWING COMMENT DURING CLOSING ARGUMENTS ON STRAHAN'S SILENCE?**

**E. WHETHER THE COURT ERRED IN NOT CAUTIONING THE JURY TO DISREGARD IMPROPER EVIDENCE?**

**F. WHETHER SIXTEEN-YEAR-OLD STRAHAN WAS ENTITLED TO A SENTENCING HEARING OR CONSIDERATION OF ALTERNATIVE SENTENCES?**

**G. WHETHER THE COURT ERRED IN REFUSING TO STRIKE JUROR CLIFF BOWEN FOR CAUSE?**

**H. WHETHER THE COURT ERRED IN DENYING STRAHAN A CIRCUMSTANTIAL EVIDENCE INSTRUCTION?**

¶6. The issues raised by the appellant are without merit, and the judgment of the trial court is affirmed.

## II. <u>LEGAL ANALYSIS</u>

**A. WHETHER THE TRIAL COURT ERRED IN DENYING A SEVERANCE?**

¶7. Strahan first argues that the trial judge should have severed his trial from that of his co-defendants, Cavett and Stevens. Specifically, Strahan argues that 1) he could not cross-examine the redacted statements of his co-defendants, which exculpated them at Strahan's expense; 2) he was prejudiced by the overwhelming weight of evidence against his co-defendants; 3) his defense was inconsistent with the defenses of his co-defendants; and 4) his "silence compared detrimentally with willingness to talk of his co-defendants."

¶8. The record reflects that Strahan waived his objection to a joint trial. During argument on the defendants' motions to sever, Strahan's attorney made the following comment before the trial court:

> [STRAHAN'S ATTORNEY]: Judge, we filed a motion to sever, too. But in the alternative to that, we would be ready to proceed without severance if the Court would grant a motion in limine that no party could mention Robert Strahan not testifying. Additionally, we would waive the motion to sever if, as part of the in limine, that none of the co-defendants would call Robert Strahan to testify; in other words, forcing him to take the Fifth.

¶9. Subsequently, the trial judge entered the following order denying the motion to sever, and granting the motion *in limine*:

> . . . All parties including the state and all co-defendant herein, are strictly prohibited from commenting in any manner about Robert Strahan not giving a statement to law enforcement following any invocation of his right to remain silent in this matter.

> . . . All parties, including the state and all co-defendants in this case are strictly prohibited from making comment in any manner about Robert Strahan not testifying at trial, if in fact he does not testify.

> . . . Based on representations of counsel for Patrick Cavett and Glenn Stevens, neither shall call Robert Strahan as a witness at the trial of this action, without first announcing the same to the Court and counsel for Robert Strahan outside the presence and hearing of the jury, and allowing counsel for Robert Strahan to object.

> . . . The State is required to strictly adhere to the ruling in ***Bruton v. U.S.***, 391 U. S. 123 . . . and its progeny, specifically, no verbal or written statement of any non-testifying defendant in this case, which is introduced into evidence or referred to at trial with the jury present, shall contain any reference to Robert Strahan, and all existing references to Robert Strahan contained in any such statements shall be redacted and removed from the same.

¶10. The record clearly reflects Strahan's willingness to proceed with the joint trial, if the trial judge granted the motion *in limine*. The trial judge granted the motion *in limine*, and Strahan agreed to proceed with the joint trial. Therefore, any objection to the joint trial was waived.

¶11. Even if this Court were to consider Strahan's argument, it is without merit.

> The trial judge has the discretion to grant a severance if it is necessary to promote a fair determination of the defendant's guilt or innocence. In ***Duckworth v. State***, 477 So.2d 935, 937 (Miss.1985), this Court stated that there are a number of criteria to be used to determine if the denial of a motion for severance is proper. These criteria are whether or not the testimony of one co-defendant tends to exculpate that defendant at the expense of the other defendant and whether the balance of the evidence introduced at trial tends to go more to the guilt of one defendant rather than the other. Absent a showing of prejudice, there are no grounds to hold that the trial court abused its discretion. ***Id.*** at 937.

*Hawkins v. State*, 538 So. 2d 1204, 1207 (Miss. 1989); *See Gossett v. State*, 660 So. 2d 1285, 1289 (Miss. 1995); *Tillman v. State*, 606 So. 2d 1103, 1106 (Miss. 1992) ("the trial court has the

discretion to grant a severance if it is necessary to promote a fair determination of the defendant's guilt or innocence"); *Johnson v. State*, 512 So. 2d 1246, 1254 (Miss. 1987); *Price v. State*, 336 So. 2d 1311, 1312 (Miss. 1976); URCCC 9.03; Miss. Code Ann. § 99-15-47 (1994).

¶12. It is noteworthy that the United States Supreme Court has recognized the importance of joint trials in the criminal justice system. *Richardson v. Marsh*, 481 U. S. 200, 209-10 (1987) ("Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability -- advantages which sometimes operate to the defendant's benefit.").

¶13. Basically, Strahan contends that, because his two co-defendants gave statements to the police which were later admitted into evidence, he was penalized for not speaking to the police and not testifying at trial. Even though all references to Strahan were redacted from the statements of his co-defendants, Strahan argues that the jury found him guilty by association.

¶14. It was clearly not a violation of Strahan's confrontation rights for the trial court to conduct a joint trial and admit the co-defendants' redacted statements. *Richardson*, 481 U.S. at 209-210; *Walker v. State*, 430 So. 2d 418, 421 (Miss. 1983). The record reflects that all references to Strahan were deleted from those statements.

¶15. Moreover, a similar "guilt by association" claim was raised in *Gossett v. State*, 660 So 2d 1285 (Miss. 1995). In that case, this Court found that the "balance of the evidence demonstrated that [the defendants] separately shot [the victim] implicating them equally in the murder. Accordingly, the trial court did not abuse its discretion in denying either of the co[-]defendants' requests for a severance." *Id.* at 1290. *See also Rigby v. State*, 485 So. 2d 1060, 1061 (Miss. 1986) (quoting *Blanks v. State*, 451 So. 2d 775 (Miss. 1984) ("we found no error in a circuit judge's refusal to grant a severance 'where all the evidence at the trial went to the guilt of both appellants and not to one more than the other.'").

¶16. Strahan withdrew his motion for severance in favor of a motion *in limine*. In addition, Strahan has not demonstrated that any of the evidence exculpated his co-defendants at his expense. He has not demonstrated that the balance of the evidence was tilted. He has not demonstrated any prejudice by the joint trial. The evidence in this case tended to implicate all defendants equally. That is, there was evidence that they all three fired guns that night. Although the statements of Strahan's co-defendants were admitted, all references to Strahan were carefully deleted therefrom. Strahan has not demonstrated any prejudice from the joint trial. Therefore, his argument on this point was previously waived and is also without merit.

## B. WHETHER THE CONVICTION WAS SUPPORTED BY SUFFICIENT EVIDENCE?

¶17. Strahan also argues that the testimony of co-indictee Calvin Shelton was incompetent and should be disregarded. Specifically, Strahan contends that Shelton did not understand the consequences of lying under oath, and, therefore, Shelton's testimony should be disregarded. Strahan's argument, however, is belied by the record.

¶18. Although Shelton's testimony indicated that he did not know the definition or the legal implications of the term "perjury", he did know what it meant to tell the truth. He also knew he could be jailed for lying under oath. Thus, Shelton knew the meaning of the oath and the importance of

telling the truth.

¶19. In support of his argument, Strahan cites *White v. State*, 532 So. 2d 1207, 1214 (Miss. 1988), a case which, ironically, contradicts Strahan's contention. In *White*, the appellant unsuccessfully challenged the competency of two witnesses:

> Appellant contests the validity of the witnesses' testimony, alleging that their failure to understand the oath they have taken undermines their entire testimony. However, while [one disputed witness] stated he did not know the meaning of the word "oath", he did testify to understanding what it meant to tell the truth, and that he had, in fact, done so. Similarly, [the other disputed witness] testified he knew what was meant when he swore to tell the truth.

> In a jury trial, the jury is the arbiter of the weight and credibility of a witness' testimony. *Rainer v. State*, 473 So.2d 172 (Miss.1985). *See also Watson v. State*, 465 So.2d 1025 (Miss.1985); *Williams v. State*, 463 So.2d 1064 (Miss.1985). While this rule of law speaks to credibility rather than competency, the thrust of appellant's . . . argument is towards the former.

*White*, 532 So. 2d at 1215.

¶20. In the alternative, Strahan argues that, even if Shelton's testimony were considered, it would be insufficient to support a conviction. Specifically, Strahan asserts that his conviction was based on the uncorroborated testimony of an accomplice, Shelton. Strahan contends that the evidence was insufficient to support the conviction.

> This Court has long held that the testimony of an accomplice must be viewed with "great caution and suspicion. Where it is uncorroborated, it must also be reasonable, not improbable, self-contradictory or substantially impeached." *Jones v. State*, 368 So.2d 1265, 1267 (Miss.1979) (and numerous cases cited therein); *See also Derden v. State*, 522 So.2d 752, 754 (Miss.1988); *Winters v. State*, 449 So.2d 766, 771 (Miss.1984); *Parker v. State*, 378 So.2d 662, 663 (Miss.1980). If the uncorroborated accomplice testimony does not suffer from these infirmities, such testimony may be found to adequately support a conviction. *See, e.g., Oates v. State*, 421 So.2d 1025, 1031 (Miss.1982); *Catchings v. State*, 394 So.2d 869, 870 (Miss.1981); *Jones v. State*, 381 So.2d 983, 988 (Miss.1980). The trial court, in its discretion, may grant a cautionary jury instruction concerning accomplice testimony. This discretion is not absolute however, and may be abused if no cautionary instruction was given, and (1) the witness was, in fact, an accomplice, and, (2) the testimony was not corroborated. *Derden*, 522 So.2d at 754.

*Johns v. State*, 592 So. 2d 86, 88-89 (Miss. 1991).

¶21. The facts to which co-indictee testified were corroborated, in pertinent part, by Patrick Holiday -- the victim's companion at the time of the murder. Furthermore, the jury was instructed to view co-indictee Shelton's testimony with "great caution and suspicion." Thus, Strahan's argument on this point is without merit.

## C. WHETHER THE EVIDENCE ADEQUATELY SUPPORTED A MURDER CONVICTION AS OPPOSED TO MANSLAUGHTER?

¶22. Strahan's next argument is that the evidence did not support a murder conviction and "only

arguably" supported a manslaughter conviction. Strahan notes that co-defendant Stevens was convicted of manslaughter, and that he and co-defendant Cavett were convicted of murder. Strahan asserts that "there was no evidence that [he] formed, nor premeditated, any intent to kill, nor exhibited a 'depraved heart'. Rather, if [he] shot at all, he shot as a reflex or as a reaction to the others shooting."

> The standard of general review for criminal convictions and directed verdicts is to consider all of the evidence in the "light most favorable to the State." *Harveston v. State*, 493 So. 2d 365, 370 (Miss. 1986). This Court can only reverse where, under the evidence, a reasonable juror could only find the defendant not guilty. *Jones v. State*, 606 So. 2d 1051, 1060 (Miss. 1992).

*Nicholson v. State*, 672 So. 2d 744, 752 (Miss. 1996). In addition, Miss. Code Ann. § 97-1-3 (1994) provides that "[e]very person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such . . . ."

¶23. In the case *sub judice*, there is evidence that Holiday and Brown were unarmed and that Strahan, Cavett, and Stevens fired upon them. At the very least, this could be construed as evidence to support a "depraved heart" murder conviction. *See* Miss. Code Ann. § 97-3-19 (1)(b) (Supp. 1997) (defining murder as "[t]he killing of a human being without the authority of law . . . [w]hen done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual"). This is particularly true, when one considers the evidence in the light most favorable to the State.

¶24. Moreover, the jury was also instructed on manslaughter. The evidence could have supported a manslaughter instruction or a murder instruction. However, the question of whether the defendant has committed murder or manslaughter is ordinarily a question to be resolved by the jury. *See Windham v. State*, 520 So. 2d 123, 127 (Miss. 1987).

¶25. Thus, the jury was instructed on both murder and manslaughter, and convicted Strahan of murder. The murder conviction was supported by the evidence. Strahan's argument to the contrary is without merit.

## D. WHETHER THE COURT ERRED IN ALLOWING COMMENT DURING CLOSING ARGUMENTS ON STRAHAN'S SILENCE?

¶26. Strahan was the only co-defendant who did not give a statement to the police. None of the three co-defendants testified at trial. Strahan contends that the prosecutor brought improper attention to his silence by making the following comments during closing arguments:

> [ASSISTANT DISTRICT ATTORNEY]: . . . But let's talk about [the murder victim] because that's why we're actually here. He never got out of the car, never fired a shot, never did anything but sit there, and what happened to him? While he's sitting there in his car with them parked behind him, where was he shot? In back of the head. And what side? The left side. And where had Patrick Cavett parked his car? Behind Jason Brown, further to the driver's side; more to the left side of the car. Certainly no self-defense. Never any reason to shoot at this young man. Never any reason to get him to stop. He never got out of his car. While he's sitting there

and they're behind him, he gets shot in the head. We see all the bullets to that car and you'll have the photographs to see where they were shooting at the driver's side of the car, the bullet holes. You'll see how they went through and across the back seat there and went out where the police officer recovered them there in the door on the opposite side of the car. You'll have those photographs to see. And we know Jason Brown was sitting there with his window up. Mike Childress explained that to you and you will see from the photographs where he pointed out that even with the broken glass you can tell the window was up because of the glass and the way it was still there at the very base of it. Why? Why? What did the defendants say?

[STRAHAN'S ATTORNEY]: Your Honor, we're going to object to that. It's improper, what the defendants say. It's improper and move for a mistrial.

THE COURT: Overruled. Motion denied.

¶27. The record reflects that Strahan's timely objection was overruled, and his motion for a mistrial was denied. Strahan argues that this comment was an improper reference to his silence, both during the investigation and the trial. The State argues that the prosecutor was not commenting on the defendant's silence, but, rather, was commenting upon the evidence, namely the statements made to police by co-defendants Cavett and Stevens.

> The Mississippi and the U.S. Constitutions provide that no person may be compelled to take the witness stand against himself. *See* Fifth Amendment to the U.S. Constitution; Article III, § 26 of the Mississippi Constitution. In order to protect this right, prosecutors are prohibited from making direct comments on the defendant's failure to testify; they are also precluded from referring to the defendant's failure to testify "by innuendo and insinuation." *Wilson v. State*, 433 So.2d 1142, 1146 (Miss.1983).

> "Balanced against this [constitutional] interest however, is the rule that attorneys are to be given wide latitude in making their closing arguments. Thus, although a direct reference to the defendant's failure to testify is strictly prohibited, all other statements must necessarily be looked at on a case by case basis." *Jimpson v. State*, 532 So.2d 985, 991 (Miss.1988), citing *Johnson v. State*, 477 So.2d 196, 209 (Miss.1985); *Ladner v. State*, 584 So.2d 743, 754 (Miss.1991); *Shook v. State*, 552 So.2d 841, 851 (Miss.1989). "There is a difference, however, between a comment on the defendant's failure to testify and a comment on the failure to put on a successful *defense*." *Jimpson*, 532 So.2d at 991 [emphasis in original]. "Moreover, the State is entitled to comment on the lack of any defense, and such comment will not be construed as a reference to a defendant's failure to testify 'by innuendo and insinuation.'" *Shook*, 552 So.2d at 851; *Alexander v. State*, 610 So.2d 320, 339-40 (Miss.1992).

> What constitutes an improper comment on the defendant's failure to testify is "to be determined from the facts and circumstances of each case. The question here is whether the comment of the prosecutor can reasonably be construed as a comment upon the failure of [the accused] to take the stand." *Ladner v. State*, 584 So.2d 743, 754 (Miss.1991) (citations omitted); *Alexander*, 610 So.2d at 339; *Griffin v. State*, 557 So.2d 542, 552 (Miss.1990).

*Jones v. State*, 669 So. 2d 1383, 1390 (Miss. 1995). *See also Davis v. State*, 660 So. 2d 1228, 1254-55 (Miss. 1995).

¶28. In the case *sub judice*, the prosecutor asked "What did the defendants say?" However, the full record of the prosecutor's closing argument reveals that she repeatedly referred to the statements of co-defendants Cavett and Stevens. When put in context, it is clear that the prosecutor was referring to the statements made by Strahan's co-defendants (Cavett and Stevens).

¶29. Furthermore, in the case *sub judice*, the jury was instructed that "[a]rguments, statements and remarks of counsel are intended to help you understand the evidence and apply the law, but are not evidence." The jury was also instructed that:

> [i]n all criminal trials, the persons charged have an [sic] right to remain silent and require the prosecution to prove each and every element of the crime charged. At no time under the laws of the United States must a person charged with a crime prove his own innocence or testify. If a person chooses not to testify, you the jury are not permitted to draw any unfavorable inference against such person, and this should not influence your verdict in any manner whatsoever.

Thus, assuming the comment could be construed to refer to Strahan, the instructions given in this case "directed the jury to ignore the fact that [Strahan] did not testify." *Blue v. State*, 674 So. 2d 1184, 1215 (Miss. 1996).

¶30. This is a very close issue, which involves a fundamental right. *See Whigham v. State*, 611 So. 2d 988, 995 (Miss. 1992) ("The right would be eviscerated if the government were free to make invidious reference when accused chose not to testify."). However, given the context of the comment and the content of the written instructions, there is no reversible error. *See Blue*, 674 So. 2d at 1215 ("Therefore, even if the prosecutor's comment highlighted [the appellant's] failure to testify, the jury instructions, when considered as a whole, directed the jury to ignore the fact that [the appellant] did not testify."); *Foster v. State*, 639 So. 2d 1263, 1288 (Miss. 1994) (where it is "not at all clear" that comment was on appellant's "exercising his constitutional rights", a cautionary instruction "that what the attorneys say is not evidence and not to be considered . . . as evidence" was "sufficient to cure any error alleged").

## E. WHETHER THE COURT ERRED IN NOT CAUTIONING THE JURY TO DISREGARD IMPROPER EVIDENCE?

¶31. During the State's re-direct examination of the pathologist who performed Brown's autopsy, the following interchange occurred with regard to gunpowder stippling on Brown's arm:

> Q. Now, to pick up on that, let's say that there were other shots fired after that where the glass [on the driver's window of Brown's car] had been broken out. And then other shooting, would that be consistent with the stippling on [Brown's] arm if other shots had been fired after the glass was shot out?

> A. Yes.

> [STRAHAN'S ATTORNEY]: We're going to object, Your Honor. That assumes facts not in evidence. In fact, it contradicts the testimony of the prior witness.

> THE COURT: Sustained.

[STRAHAN'S ATTORNEY]: And I would ask that the jury be told to disregard the answer, please.

THE COURT: Request denied. The objection is sustained. You may proceed.

[STRAHAN'S ATTORNEY]: And motion for a mistrial.

THE COURT: Denied.

¶32. Strahan contends that the trial judge committed reversible error by refusing to admonish the jury to disregard the pathologist's testimony. Specifically, Strahan argues that:

> The evidence about stippling from close range shots was prejudicial because it created the illusion of many shots at a close enough range to cause stippling on the arm of the victim. There was no evidence that any of the defendants got close enough to cause the stippling on Jason Brown's arm.

¶33. Strahan's argument assumes that pathologist's testimony was improper or prejudicial. However, there was evidence in the record that Brown's window had been shot and that one of the attackers held a gun out the window of the Cougar. The cars were relatively close in proximity. The pathologist also testified that the stippling on Brown's arm occurred within seconds or minutes prior to the fatal gunshot wound. Therefore, it is unclear which facts not in evidence were assumed in the formulation of the question. In fact, both of Strahan's co-defendants argue on appeal that the pathologist's testimony supported the case for the defense, because it demonstrated that the stippling came from within the car, and that Brown's companion (Holiday) must have possessed a gun. There was no impropriety or prejudice to Stevens from this testimony.

¶34. However, assuming that the testimony was improper, defense counsel's objection to the testimony was sustained. The jury was admonished to disregard the testimony by Instruction C-1: "You are to disregard all evidence which was excluded by the Court from consideration during the course of the trial." Indeed,

> [i]t is the well established rule in Mississippi that where a trial judge sustains an objection to testimony interposed by the defense in a criminal case and instructs the jury to disregard it, the remedial acts of the court are usually deemed sufficient to remove any prejudicial effect from the mind of the jurors. The jury is presumed to have followed the directions of the trial judge.

*Vickery v. State*, 535 So. 2d 1371, 1380 (Miss. 1988) (citations omitted).

¶35. Of course, in this case, the trial judge did not immediately grant the request to admonish the jury. Rather, the trial judge denied the contemporaneous request for an admonition, and gave the admonition at the conclusion of the evidence.

¶36. "As this Court has oft-stated: 'Our criminal justice system necessarily proceeds on the premise that jurors take their responsibilities quite seriously,' and this Court 'presume[s] as a matter of institutional imperative that our jurors respect the law as they are instructed by the court.'" *Alexander v. State*, 602 So. 2d 1180, 1183 (Miss. 1992) (quoting *Middlebrook v. State*, 555 So. 2d 1009, 1013 (Miss. 1990)). *See also Hoops v. State*, 681 So. 2d 521, 528-29 (Miss. 1996) (jury is

presumed to have followed trial judge's admonition to disregard witness's inappropriate remarks).

¶37. Even assuming that the disputed testimony was improper, Strahan was not prejudiced thereby. His timely objection was sustained, and the jury received written instructions to disregard the testimony. Therefore, this issue is without merit.

## F. WHETHER SIXTEEN-YEAR-OLD STRAHAN WAS ENTITLED TO A SENTENCING HEARING OR CONSIDERATION OF ALTERNATIVE SENTENCES?

¶38. Strahan, who was sixteen years old when the April 28, 1995, crime was committed, argues that the circuit judge should have considered alternative sentencing under the Youth Court Act.[1] For this reason, Strahan contends that the case should be remanded for re-sentencing. In support of his argument, Strahan cites a line of cases interpreting Miss. Code Ann § 43-21-159 (3), prior to that statute's July 1, 1994 amendment. *See, e.g., Swinford v. State*, 653 So. 2d 912, 917-18 (Miss. 1995); *Erwin v. State*, 557 So. 2d 799, 802-3 (Miss. 1990); *Gardner v. State*, 455 So. 2d 796 (Miss. 1984); *May v. State*, 398 So. 2d 1331 (Miss. 1981).

¶39. Indeed, the old version of that statute provided for alternative sentencing of youth offenders convicted in the circuit court. However, that portion of the statute was subsequently rewritten, effective July 1, 1994, to provide that if "the youth is convicted of a crime by any circuit court , the trial judge shall sentence the youth as though such youth was an adult." Miss. Code Ann. § 43-21-159 (4) (Supp. 1994).

¶40. This statutory amendment took effect almost one year before the tragic incident at issue. Moreover, Strahan was convicted of murder, and Miss. Code Ann. § 97-3-21 (1996) mandates that "[e]very person who shall be convicted of murder shall be sentenced by the court to imprisonment for life in the State Penitentiary." Therefore, the trial judge properly declined to consider alternative sentencing, and the sentence imposed was proper.

## G. WHETHER THE COURT ERRED IN REFUSING TO STRIKE JUROR CLIFF BOWEN FOR CAUSE?

¶41. Strahan also argues that the trial judge erred by not allowing him to strike for cause venireman Cliff Bowen. However, the record reflects that the defendants did not use all twelve peremptory challenges and that the disputed venireman did not serve on the jury. Therefore, Strahan's argument on this point is procedurally barred. *Wilcher v. State*, 697 So. 2d 1087, 1099 (Miss. 1997).

## H. WHETHER THE COURT ERRED IN DENYING STRAHAN A CIRCUMSTANTIAL EVIDENCE INSTRUCTION?

¶42. Strahan's final argument is that trial court should have granted a circumstantial evidence instruction.

> A circumstantial evidence instruction should be given only when the prosecution can produce neither an eyewitness nor a confession by the defendant. *Stringfellow v. State*, 595 So.2d 1320, 1322 (Miss.1992); *Ladner v. State*, 584 So.2d 743, 750 (Miss.1991); *Clark v. State*, 503 So.2d 277, 279 (Miss.1987); *Keys v. State*, 478 So.2d 266 (Miss.1985); *Mack v. State*, 481 So.2d 793 (Miss.1985).

*Chase v. State*, 645 So. 2d 829, 850 (Miss. 1994).

¶43. Strahan exercised his right to remain silent during the investigation and at trial, and there is no confession. Strahan further contends that there were no eyewitness accounts of the shooting. He bases this argument on the testimony of co-indictee Shelton, who said that he was riding in the backseat of the car with Strahan. When the shooting started, Shelton ducked. He did not see Strahan shoot, but he felt Strahan's hands moving on his back as Strahan fired a .380 weapon three or four times. Furthermore, the testimony of Brown's companion, Holiday, corroborates the fact that Strahan was shooting.

¶44. Thus, there was ample direct or "eye"witness evidence of Strahan's involvement in this crime. *See generally Clark v. State*, 503 So. 2d 277, 279 (Miss. 1987) (court held that there was eyewitness testimony where witness did not see knife in defendant's hand and could not say that defendant stabbed victim, but witness saw the defendant hit victim in stomach, the bloody defendant fall back, and a knife on the floor). Therefore, Strahan's argument that he was entitled to a circumstantial evidence instruction is without merit.

> [This Court has ] reversed cases in which (1) the State's proof consisted entirely of circumstantial evidence; and (2) the trial court failed to grant a circumstantial evidence instruction.
>
> However we will not reverse a conviction based upon both direct and circumstantial evidence.

*Clark v. State*, 503 So. 2d 277, 278 (Miss. 1987) (citations omitted).

### III. <u>CONCLUSION</u>

¶45. The issues raised by Strahan are without merit. Therefore, the judgement of the trial court is affirmed.

¶46. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PITTMAN, P.J., ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. SULLIVAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS AND McRAE, JJ.**

**SULLIVAN, PRESIDING JUSTICE, DISSENTING:**

¶47. Having reviewed the record and the law relevant to the improper comments during closing argument by the prosecution, I cannot agree with the majority that Strahan received a fair trial. Both his constitutional right to confront his accusers and his right against self incrimination were violated. It is for this reason that I respectfully dissent.

¶48. Strahan invoked his constitutional right not to testify at trial and was the only co-defendant that did not give a pretrial statement to the police. None of the co-defendants testified at trial. Strahan

moved for a severance or in the alternative a motion in limine regarding the statements given by the co-defendants. While I agree Strahan cannot now complain that his prior motion for severance was denied since that motion was withdrawn, he does have a constitutional right and a legitimate expectation that the trial court will enforce his motion in limine prohibiting any testimony or improper comments on not only Strahan's exercising his right to remain silent after his arrest but also his right not to testify at trial. This was not done. In addition, Strahan has a legitimate expectation that any pre-trial statements made by his co-defendants to police which are introduced at trial cannot be used to implicate him since he was unable to question them at trial.

## STRAHAN'S CONSTITUTIONAL RIGHT TO CONFRONT HIS ACCUSERS

¶49. The authority for this right and what it means was explained by the dissent in *Wilcher v. State*, 697 So. 2d 1087 (Miss. 1997) (Sullivan, P.J., dissenting) as follows:

> In *Crapps v. State*, 221 So.2d 722, 723 (Miss.1969), this Court stated that the Sixth Amendment to the United States Constitution established the right to confrontation. In *Hubbard v. State,* 437 So.2d 430, 433-34 (Miss.1983), this Court stated that the Mississippi Constitution, Article 3, Section 26, grants and guarantees a criminal defendant the right to confront witnesses against him. *See also Stromas v. State*, 618 So.2d 116, 121 (Miss.1993). The right of confrontation "extends to and includes the right to fully cross- examine the witness on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony." *Myers v. State*, 296 So.2d 695, 700 (Miss.1974).

*Wilcher*, 697 So.2d at 1116. This Court has further said:

> [I]n holding the Sixth Amendment right of confrontation applicable to the States through the Fourteenth Amendment, this Court said, "There are few subjects, perhaps, upon which this Court and other courts have been nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal."

*Earl v. State*, 672 So. 2d 1240, 1242 (Miss. 1996) (*quoting* Barber v. Page, 390 U.S. 719, 721 (1968)).

¶50. It is true that the pre-trial statements by the two other co-defendants introduced at the trial had been properly redacted regarding Strahan. This Court has approved such a procedure in lieu of granting a severance of co-defendants. *Walker v. State*, 430 So. 2d 418, 421 (Miss. 1983) (holding that "the trial judge should require the state to elect between a joint trial in which the statement is excluded, a joint trial in which the statement is admitted, but the portion implicating the accused is deleted, or agree to a severance"). However, the prosecution was allowed to use its closing argument to unlawfully put before the jury information that was otherwise not permitted in violation of the motion in limine granted and Strahan's right to confront his accusers. The majority correctly writes the relevant language of the trial judge's order but only by way of explanation that Strahan agreed to proceed with the joint trial with the other two co-defendants. It fails to explain how this order was not adhered to by the State. The relevant part of the record which occurred during closing argument is as follows:

[ASSISTANT DISTRICT ATTORNEY]: Why [Jason Brown is] not here is because he was at the Metrocenter on a Friday night, minding his own business, leaving that place when these *three* walked in. When *they* go out there and spot a car in that parking lot that did not belong to *them*, but it looked good enough for them that they wanted it.

[CAVETT'S ATTORNEY]: Objection, Your Honor. Outside the evidence presented in Court.

The COURT: Sustained.

[CAVETT'S ATTORNEY]: Move for a mistrial.

THE COURT: Denied.

[ASSISTANT DISTRICT ATTORNEY]: You heard the testimony and evidence. You heard the testimony from this stand where Detective Wade told you that Glynn Stevens said *they* went to the Metro to steal a car.

[CAVETT'S ATTORNEY]: Objection, Your Honor. Outside the evidence that was presented in court.

THE COURT: Let me see you at the bench a moment, please.

(OFF THE RECORD DISCUSSION AT THE BENCH)

THE COURT: Ladies and gentlemen, let me ask you to please be excused for a couple of moments while we take up a legal matter.

(PROCEEDINGS OUTSIDE THE PRESENCE OF THE JURY.)

[CAVETT'S ATTORNEY]: Your Honor, for the record, I would like for the Court to understand my objection is, as the Court is aware, that [the prosecutor] is getting up in front of the jury on closing and saying that Glynn Stevens said that "they" were going to steal a car. This was the whole point of my objection as to them being allowed to put into evidence anything that had been redacted out of the statement because I was afraid that the State was going to try to get up here at closing and say they intended to steal a car, not just Glynn Stevens.

I know when the Court allowed the State to put in that evidence that the Court said that they just talk about Glynn Stevens. Now they're talking about they. This is a three-defendant trial. A severance was not allowed. I think the State knows that when they sit up there and talk about they, that they are implicating the other two defendants in an auto theft that I argued about when they were trying to get the redacted portions back in evidence.

I'm making an objection and asking the Court, if the Court sustains my objection, to advise the jury to disregard the statements made by the Assistant District Attorney and to further instruct the jury that only Glynn Stevens had the intent to steal a car when he went to Metrocenter.

THE COURT: Response?

[ASSISTANT DISTRICT ATTORNEY]: No response, Your Honor.

THE COURT: All right. I already sustained the objection. The motion to advise the jury about what it is they ought to -- who they ought to attribute it to and all that stuff I think serves to call more attention to what happened than to benefit you by having me give that incautionary advice. So I'm going to decline your invitation to have the Court do that.

I'm going to advise you, [Assistant District Attorney], that we've been here four days. It would be tragic for you to do something at the end of the case that compels me to have to declare a mistrial after us having been here for four days.

Do you have something to add?

[STRAHAN'S ATTORNEY]: Yes, Your Honor. I want to join in the objection and Strahan moves for a mistrial.

[CAVETT'S ATTORNEY]: So does Cavett, Your Honor.

THE COURT: Motion for a mistrial is denied. Bring the jury back in.

¶51. The prosecution did through the back door what it could not do directly, namely attribute the motive of stealing a car to all three co-defendants when only Stevens, by way of his pre-trial statement to the police, stated that he had this intent. This prosecutorial misconduct should not be overlooked by this Court, for it does violate Strahan's constitutional right to confront his accuser, co-defendant Stevens. As already stated, none of the co-defendants testified at trial. Even if it was not an abuse of discretion for the trial judge to overrule the motion for a mistrial, the trial judge was in error when he chose not to even admonish the jury contemporaneously that the assistant district attorney's improper comments should be disregarded. The conviction of Strahan should be reversed and remanded for a new trial.

## STRAHAN'S CONSTITUTIONAL RIGHT TO REMAIN SILENT

¶52. A defendant has a constitutional right not to testify at trial or have his silence anytime after his arrest be used against him. *Carr v. State*, 655 So. 2d 824, 845 (Miss. 1995). "'Direct comment on a defendant's failure to testify is constitutionally impermissible and constitutes error.'" *Taylor v. State*, 672 So. 2d 1246. 1280 (Miss. 1996) (Sullivan, P.J., concurring in part and dissenting in part) (quoting Ladner v. State, 584 So. 2d 743, 754 (Miss. 1991)). "'Prosecutors are also forbidden from referring to a defendant's failure to testify 'by innuendo and insinuation.'" *Taylor*, 672 So. 2d at 1280 (*quoting Jimpson v. State*, 532 So.2d 985, 991 (Miss.1988)).

¶53. It is undisputed that Strahan did not give a statement to the police nor did he testify at trial. During closing argument the following comments were made:

[ASSISTANT DISTRICT ATTORNEY]: . . . We see all the bullets to that car and you'll have the photographs to see where they were shooting at the driver's side of the car, the bullet holes. You'll see how they went through and across the back seat there and went out where the police officer recovered them there in the door on the opposite side of the car. You'll have those photographs to see. And we know Jason Brown was sitting there with his window up. Mike Childress explained that to you and you will see from the photographs where he pointed out

that even with the broken glass you can tell the window was up because of the glass and the way it was still there at the very base of it. ***Why? Why? What did the defendants say?***

[STRAHAN'S ATTORNEY]: Your Honor, we're going to object to that. It's improper, what the defendants say. It's improper and move for a mistrial.

THE COURT: Overruled. Motion denied.

¶54. The majority concedes this a very close issue, which involves a fundamental right and cites to ***Whigham v. State***, 611 So. 2d 988, 995 (Miss. 1992) for the premise that "[t]he right would be eviscerated if the government were free to make invidious reference when accused chose not to testify." Nevertheless, the majority agrees with the State that the prosecutor was not commenting on the defendant's silence, but, rather, was commenting upon the evidence, namely the statements made to police by co-defendants Cavett and Stevens. Even if this was arguably so, a conclusion with which I disagree, Strahan did not make any statement to the police nor did he testify. "A defendant has the right to remain silent following arrest, and not have that silence used against him . . . ." ***Carr,*** 655 So. 2d at 845. The comment "What did the defendants say" is a direct comment on Strahan's silence whether it be before or during trial and is constitutionally impermissible and constitutes impermissible error that warrants reversal of Strahan's conviction. There is no other reasonable construction of the language used by the district attorney other than a direct comment on Strahan's invocation to invoke his constitutional right to remain silent. ***Ladner v. State***, 584 So. 2d 743, 754 (Miss. 1991). This particular error affecting such a fundamental right, even when a cautionary instruction is given to the jury prior to deliberations, is incurable. *See* ***Livingston v. State***, 525 So. 2d 1300, 1307 (Miss. 1988); ***Peterson v. State***, 357 So. 2d 113, 115 (Miss. 1978).

¶55. "We have never demanded the State provide a perfect trial, but we do require a fair one." ***Taylor v. State***, 672 So. 2d 1246, 1281 (Miss. 1996) (Sullivan, P.J., concurring in part and dissenting in part). Both Strahan's constitutional right to confront his accusers and his right to remain silent were violated during the assistant district attorney's closing argument. Therefore, Strahan was not given a fair trial that comports with his constitutional rights that our forefathers thought so important. For both of these reasons, I respectfully dissent.

**BANKS AND McRAE, JJ., JOIN THIS OPINION.**

1. It should be noted that the circuit court had statutory jurisdiction over this case under, Miss. Code Ann. § 43-21-159 (7) (Supp. 1994), which provides that "[n]o offense involving the use or possession of a firearm by a child who has reached his fifteenth birthday and which, if committed by an adult would be a felony, shall be transferred to the youth court."