# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CT-01065-SCT

*DESMOND D. WALTON*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/04/2005 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MISSISSIPPI OFFICE OF INDIGENT APPEALS |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | JON MARK WEATHERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/13/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     After a jury trial in the Circuit Court of Forrest County, Judge Robert B. Helfrich presiding, Desmond D. Walton was convicted of murder and sentenced to a term of life imprisonment in the state penitentiary. Walton appealed his conviction and sentence, and the Court of Appeals unanimously affirmed. *Walton v. State*, 2007 Miss. App. LEXIS 757 (Miss. Ct. App. Nov. 13, 2007), *rehearing denied*, *Walton v. State,* 2008 Miss. App. LEXIS 162 (Miss. Ct. App. March 18, 2008). Walton petitioned this Court for a writ of certiorari,

and we granted certiorari to address the issue of whether the Court of Appeals erred in holding that the admission of his statement given without a proper *Miranda* warning was harmless error. Finding that the error was harmless, we affirm.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT[1]

¶2.    On June 1, 2004, Patrick Anderson a/k/a "PoBill" was found dead from a gunshot wound, lying face down in his driveway. Anderson was a reputed drug dealer and member of the Black Gangster Disciples. He lived in the Rawls Springs community just outside Hattiesburg in a house surrounded by a six-foot fence, guard dogs, and closed-circuit television cameras. No footage of the murder was captured by these cameras. No weapon was recovered from the scene. Anderson was found with six hundred dollars in cash on his person. No eyewitnesses came forward; however, observers of the police investigation of the murder scene indicated that a dark-colored Lincoln automobile might have been involved.

¶3.    After hearing that law enforcement personnel were looking for his car, Jonah Pinkney turned himself into the George County Sheriff's Department in Lucedale. Pinkney gave investigators the names of Jerry Street, Eric Love, and Michael Love. Street and Michael Love eventually would surrender to law enforcement as well. Each gave statements and testified at trial. Both Pinkney and Street implicated Walton as the shooter, and Michael Love stated that Walton admitted to him, " Man I did him [Anderson]. I had to do him."

---

[1]The facts of this opinion are for the most part gleaned from the facts in the Court of Appeals opinion, *Walton v. State*, 2007 Miss. App. LEXIS 757 (Miss. Ct. App. Nov. 13, 2007).

2

¶4.    Pinkney testified that he owned a 2002 Lincoln LS. He testified that his cousin, Jerry Street, called him on the day of the murder and asked him for a ride to Hattiesburg for the purpose of visiting "some girls." Pinkney then met Street, Michael Love, Eric Love, and a person whom he did not know, but later learned was Desmond Walton. Pinkney, Street, and Walton rode to Hattiesburg in Pinkney's car. Michael and Eric Love followed in a pick-up truck. Pinkney recalled that, upon arriving in Hattiesburg, they made an initial stop at "some apartments,"where Eric Love got into his car along with Street and Walton. They left the apartments in Pinkney's car. Michael Love remained in his truck.

¶5.    They continued driving around in the two vehicles until Michael Love flashed his lights at Pinkney's car to alert them that Patrick Anderson, the soon-to-be victim, had passed by Pinkney's car in his truck. Pinkney was instructed to turn around and follow Anderson's vehicle. Upon arriving at Anderson's home, Walton instructed Pinkney to pull in behind Anderson's truck. Walton got out of the car wearing a Halloween mask that resembled a skull. As Anderson approached Pinkney's car, Walton met him; and the pair began talking. Pinkney saw Walton grab Anderson by the shirt and shoot him. Pinkney then drove Street and Walton back to Lucedale. En route, Walton discarded the Halloween mask alongside Highway 98. The mask was recovered by a Mississippi Department of Transportation employee. At trial, Pinkney identified this mask as the one worn by Walton on the day of the killing.

¶6.    Michael Love testified at trial that Anderson was his drug supplier who "fronted him" drugs that he would, in turn, sell on behalf of Anderson. He testified that the purpose of the

3

trip to Hattiesburg was to buy drugs. Michael also testified that he was at the apartments at the time of the shooting and therefore did not actually witness the shooting. He further stated that he later met Eric Love, and the two drove back to Lucedale, where they rejoined Walton, Street, and Pinkney. He recalled that Walton, in discussing the murder, stated to him: "Man I did him [Anderson]; I had to do him."

¶7. Street testified that Pinkney, Eric Love, and Michael Love were his cousins. He testified that the purpose of the trip to Hattiesburg was to rob someone. After driving around and spotting Anderson in his vehicle, they followed Anderson to his house, where Walton got out of the car wearing a Halloween mask and shot Anderson.

¶8. Walton was taken into custody on June 11, 2004, in Mobile, Alabama. While in custody, he was interviewed on two occasions. The interviews were videotaped but not transcribed. An agent with the Drug Enforcement Agency conducted the first interview concerning incidents unrelated to the murder of Anderson. This interview was terminated when Walton stated he did not want to continue to answer questions. This videotape was suppressed by the trial judge after the agent's refusal to appear in Mississippi to testify. After this interview, as Walton was being escorted back to his cell, a Mobile police officer told him that if he were going to make a statement to help himself "now was the time." The second interview was conducted by Detective Don Gomien with the Mobile Police Department. For most of the forty-minute interview, Walton maintained his innocence. Walton then claimed that he had gone to Anderson's house to buy drugs and that, during the

4

drug exchange, Anderson had pulled out a gun and Walton had shot him in self-defense. Walton was not given his *Miranda* warnings prior to this second interview.[2]

¶9. Eric Love was awaiting his own trial at the time of Walton's trial, and Eric did not testify. Walton did not testify on his own behalf or offer any other evidence. The jury found Walton guilty of the murder of Anderson, and the judge sentenced Walton to a term of life imprisonment in the custody of the Mississippi Department of Corrections.

**PROCEEDINGS IN THE COURT OF APPEALS**

¶10. The Court of Appeals did not characterize the statements in the second interview as a confession, but as an assertion by Walton that he acted in self-defense in shooting Anderson. The Court of Appeals, however, did find that the admission of this videotape was prejudicial to Walton's defense. *Walton v. State*, 2007 Miss. App. LEXIS 757, *10-11 (Miss. Ct. App. Nov. 13, 2007). As noted by the Court of Appeals: "However, the issue is not simply prejudice. It is, whether in light of the record as a whole, Walton would have been convicted beyond a reasonable doubt even without the tainted statement." *Id*. The appellate court found beyond a reasonable doubt that even without the tainted confession, Walton would have been found guilty based on the overwhelming weight of the evidence, which included the testimony of his three co-defendants. *Id*. As a result, the Court of Appeals found Walton's first assignment of error to be without merit.

---

[2]*Miranda v. Arizona*, 384 U.S. 436, 472-75, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶11. As to Walton's ineffective assistance of counsel claim, the Court of Appeals found the record "insufficient" for such a determination. *Id*. at \*12. Moreover, the Court of Appeals relied on the holding in ***Ramsey v. State***, 959 So. 2d 15 (Miss. Ct. App. 2006) (citing ***Read v. State***, 430 So. 2d 832, 841 (Miss. 1983)) in stating: "An appellate court will only address an issue of ineffective assistance of counsel on direct appeal if the parties stipulate counsel was ineffective, or the record is clear that counsel's performance was so deficient as to raise constitutional issues." The Court of Appeals found at least one legitimate reason that Walton's counsel declined to request the manslaughter instruction insomuch as "a charge carrying a twenty-year maximum sentence would not have been sufficiently less onerous than a life sentence, to risk allowing the jury to consider a charge carrying lightened elements of a crime." *Id.* at \*12-13. The Court of Appeals dismissed this claim without prejudice so as to allow Walton to raise it more properly in a petition for post-conviction relief. *Id*. at \*13. The Court of Appeals unanimously affirmed the conviction and sentence of the trial court. After his motion for rehearing was denied by the Court of Appeals, Walton filed his petition for writ of certiorari seeking this Court's review of the Court of Appeals' judgment.

## DISCUSSION

¶12. Walton espouses two assignments of error by the trial court and the Court of Appeals for this Court's review: (1) whether the Court of Appeals erred in finding that the trial court's

6

admission of his statement (or, as phrased by Walton, his "coerced confession")[3] given without a proper **Miranda** warning was harmless error, and (2) whether the Court of Appeals erred in dismissing Walton's ineffective-assistance-of-counsel claim for failing to request a manslaughter instruction as a lesser-offense instruction. Notwithstanding the assignments of error which Walton presents to us for review, this Court unquestionably has authority to limit the question for review upon a grant of certiorari. *See* Miss. R. App. P. 17(h).

¶13. As to the second issue raised by Walton we adopt the Court of Appeals' reasoning in toto insomuch as the issue was properly dismissed without prejudice due to an insufficient record. The Court of Appeals quite appropriately found that this issue should be dismissed without prejudice so that it could be more properly raised in post-conviction-relief proceedings. We thus address the one issue we have chosen to discuss upon our grant of certiorari.

> **WHETHER THE COURT OF APPEALS ERRED IN FINDING THAT THE ADMISSION OF WALTON'S SECOND STATEMENT WAS HARMLESS ERROR.**

¶14. Constitutional error does not automatically require reversal of a conviction. ***Chapman v. California***, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L. Ed. 2d 705 (1967). However, before a constitutional error is determined to be harmless, "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." ***Arizona v. Fulminante***, 499 U.S. 279, 295,

---

[3]Nothing in this opinion should be construed as our stating, or even implying, that we are addressing the issue as to whether Walton's second statement to law enforcement was "a coerced confession."

7

111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). An error may be found by this Court to be harmless beyond a reasonable doubt only "where the weight of the evidence against the accused is overwhelming." *Clark v. State*, 891 So. 2d 136, 142 (Miss. 2004) (citing *Riddley v. State*, 777 So. 2d 31, 35 (Miss. 2000)). A harmless-error determination "requires an examination of the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt." *Hopkins v. State*, 799 So. 2d 874, 879 (Miss. 2001) (citing *United States v. Dixon*, 593 F.2d 626, 629 (5th Cir. 1979). A harmless-error determination is made based on a de novo review of the record. *Fulminante,* 499 U.S. at 295.

¶15. Based on the record, it is clear that Walton was not properly advised of his rights under *Miranda* in the second police interrogation and that the admission of the statements during this interview reached the level of constitutional error. As such, the trial court's error must be subjected to a harmless error analysis–whether the error was harmless beyond a reasonable doubt upon review of the weight of the evidence. This Court agrees wholeheartedly with the Court of Appeals' finding that, even without the videotaped statement, based on the overwhelming weight of the evidence of Walton's guilt as revealed in the record before us, a jury would have found beyond a reasonable doubt that Walton was guilty of the murder of Anderson.

¶16. Three of the four co-defendants present on the day of the murder testified that Walton was the shooter. Two of these co-defendants were eyewitnesses to the murder. Another co-defendant, Michael Love, testified that Walton admitted to being the shooter. Michael Love

8

recalled Walton saying, "Man I did him [Anderson]; I had to do him." Had the videotape been properly excluded, the jurors still would have had the opportunity to assign the same amount of weight and credibility to the witnesses; therefore, the overwhelming weight of the evidence points to the guilt of the accused. It is not the role of this Court to usurp the jury as final arbiter of the weight and credibility assigned to the testimony of witnesses. This Court repeatedly has held that the proper role of jurors is to resolve factual disputes by assigning the proper credibility to witnesses:

> In *Benson v. State*, 551 So. 2d 188, 193 (Miss. 1989), this Court held that factual disputes are properly resolved by the jury in a criminal prosecution and do not mandate a new trial. The jury is the trier of witness credibility. *Collier v. State*, 711 So. 2d 458, 462 (Miss. 1998). Jurors are permitted to, and have a duty to, resolve conflicts in testimony they hear. *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983); *Gandy v. State*, 373 So. 2d 1042, 1045 (Miss. 1979). "[Jurors] may believe or disbelieve, accept or reject, the utterances of a witness." *Gandy*, 373 So. 2d at 1045. There is no formula that dictates the juror's decision in resolving conflicts in testimony of the witness. *Id*. The jury is the final arbiter of a witness's credibility. *Morgan v. State*, 681 So. 2d 82, 93 (Miss. 1996). The jury weighs the weight and worth of any conflicting testimony. *Williams v. State*, 757 So. 2d 953, 957 (Miss. 1999).

*Hicks v. State*, 812 So. 2d 179, 194 (Miss. 2002).

¶17.    Walton dismisses the incriminating testimony of these witnesses by virtue of the fact that, as co-defendants, their statements were not credible. This Court has long held that "the testimony of an accomplice must be viewed with 'great caution and suspicion.'" *Strahan v. State*, 729 So. 2d 800, 805 (Miss. 1998) (quoting *Jones v. State*, 368 So. 2d 1265, 1267 (Miss. 1979)). As to whether an accomplice jury instruction should be granted by the trial court, this Court has said:

9

It is within the discretion of the trial court to grant a cautionary instruction pertaining to the testimony of an accomplice witness. *Burke v. State*, 576 So. 2d 1239, 1242 (Miss. 1991). The discretion is not absolute and may be abused. *Id*. This Court, in *Wheeler v. State*, 560 So. 2d 171 (Miss. 1990), held the following: In *Van Buren v. State*, 498 So. 2d 1224, 1229 (Miss.1986), this Court said, "the granting of a cautionary instruction regarding the testimony of an accomplice is discretionary with the trial judge." (Citations omitted). However, that discretion is not absolute; it may be abused. [*Derden*], 522 So. 2d 752, 754.The *Derden* case stated that two of the aspects in determining whether a trial judge has abused his discretion concerning a "caution and suspicion" instruction are: (1) was the witness an accomplice; and, (2) was his testimony without corroboration.

*Slaughter v. State*, 815 So. 2d 1122, 1134 (Miss. 2002). In this case, the trial judge did, in fact, grant an accomplice jury instruction. The following jury instruction, marked "Amended D-3," was given by the trial judge:

The court instructs the jury that the law looks with suspicion and distrust on testimony of an accessory to a crime and requires the jury to weigh the testimony from an accessory and in passing on what weight, if any, you should give this testimony, you should weigh it with great care and caution, and look upon it with distrust and suspicion.

Juries are presumed to follow the instructions given to them by the court. *Wheeler v. State*, 826 So. 2d 731, 740 (Miss. 2002) (citing *Weaver v. State*, 497 So. 2d 1089, 1094 (Miss. 1986)). Therefore, the jury is presumed to have properly weighed the witnesses' testimony with great care and caution and to have looked upon it with distrust and suspicion.

¶18.    Walton cites inconsistencies among the witnesses' testimony in an attempt to discredit them. As to the variance in witnesses' perceptions of a common nucleus of events this Court has remarked, "Seldom do witnesses agree on every detail. Indeed, their failure to do so is often strong evidence each is trying to portray the situation as he saw it, and that is to the

10

credit, rather than the discredit of the witnesses." ***Noe v. State***, 616 So. 2d 298, 302 (Miss.

1993). Moreover, Walton points to defense exhibits that suggest the co-defendants–with the

exception of Walton–shared cells while in custody at the local jail. Walton asserts that Jerry

Street's statements to law enforcement were influenced by his having shared a jail cell with

Jonah Pinkney prior to giving the statements. However, Jerry Street's cross-examination

testimony makes it clear that he gave his statement to law enforcement prior to being housed

in a cell with Jonah Pinkney:

> Q. Before you gave these statements though, you were in that cell; weren't
> you?
> A. Before? Before?
> Q. Uh-huh. You were in the cell with Jonah for a few days?
> A. Nuh-uh, I gave it before I got in the cell with Jonah.
> Q. Are you positive about that?
> A. Yes, sir. I got in the cell–before I got in the cell with Jonah, I gave that
> statement.

Street's version of these events was confirmed by the testimony of Forrest County

Investigator David Jarrell on cross examination, i.e. that the two were in separate cells three

to four days prior to their having given statements. Jarrell further testified that any

documentation to the contrary was a mistake. The facts, as presented to the jury, simply do

not support Walton's theory that his conviction was the result of a conspiracy on the part of

his accomplices to frame him for Anderson's murder.

¶19.    For the reasons discussed, we find this issue to be without merit.

## CONCLUSION

¶20.    Having fully discussed the sole issue we have chosen to address upon our grant of certiorari, and for the reasons stated, we affirm the judgment of the Court of Appeals and the Forrest County Circuit Court's judgment of conviction and life sentence imposed upon Desmond D. Walton for the murder of Patrick Anderson.

¶21.    **THE JUDGMENTS OF THE COURT OF APPEALS AND THE FORREST COUNTY CIRCUIT COURT ARE AFFIRMED. CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J.  LAMAR, J., NOT PARTICIPATING.**

**DIAZ, PRESIDING JUSTICE, DISSENTING:**

¶22.    I must respectfully dissent from today's opinion as the contradictory testimony of the three co-defendants in this case can hardly constitute "overwhelming" evidence of murder.

¶23.    As the majority admits, the only evidence the State had against Walton was the testimony of three of his co-defendants, all of whom were related to one another.  Initially, all of the co-defendants were indicted for Anderson's murder, but prior to Walton's trial, the testifying co-defendants each pleaded guilty as accessories after the fact and were given light sentences.  In addition, each of these witnesses gave conflicting statements to police, as well as conflicting testimony at trial.  Other than the admitted participants to the crime, there were no witnesses, and there was no physical evidence pointing to Walton.

12

¶24. The majority correctly recites the long-standing rule that "the testimony of an accomplice must be viewed with 'great caution and suspicion.'" Maj. Op. at 9 (quoting *Strahan v. State*, 729 So. 2d 800, 805 (Miss. 1998)). Yet, even though our law is clear that such testimony is highly questionable, the majority somehow finds that these statements constitute "overwhelming" evidence of Walton's guilt. I fail to see how suspicious testimony can rise to the level of "overwhelming."

¶25. The Court further erodes our case law by holding that, in this case, the rule does not apply because the jury was properly instructed on accomplice testimony. However, this completely ignores the prejudicial effect of the videotaped statement. The Court of Appeals clearly, and correctly, found that the confession "***had*** to have been prejudicial." ***Walton v. State***, 2007 Miss. App. LEXIS 757, ¶ 13 (Nov. 13, 2007). The jury could have easily found the witnesses' testimony suspicious – as does, on normal occasions, this Court – and rested its verdict on the improperly admitted statement.

¶26. Accomplice testimony, by its very nature, cannot form the basis of "overwhelming evidence." Therefore, the majority implicitly acknowledges that the videotaped statement is what raised the weight of the evidence to an "overwhelming" level. Given this, one can hardly contend that the admission of the videotaped statement had no effect on the jury and was harmless. Indeed, given that it may have led to a conviction for the most serious crime recognized in our state, the error is the most harmful imaginable.

¶27. In light of the highly questionable testimony of his co-defendants, Walton's statement must have had a significant impact upon the jury, and such testimony *cannot* form the basis

13

of "overwhelming" evidence of his guilt. This Court cannot conclude that this evidence could have established guilt of murder "beyond a reasonable doubt." ***Thomas v. State***, 711 So. 2d 867, 872 (Miss. 1998) (internal citations and quotations omitted). The improperly admitted statement was certainly of great significance "in relation to everything else the jury considered on the issue," *Id.* at 873, and there can be no other conclusion that the admission of the statement was reversible error. The judgments of the Court of Appeals and the trial court should be reversed, and this case should be remanded for a new trial.

**GRAVES, J., JOINS THIS OPINION.**