IN THE SUPREME COURT OF MISSISSIPPI

NO. 2009-CT-00854-SCT

*DANTE LAMAR EVANS*

*v.*

*STATE OF MISSISSIPPI*

ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/12/2009 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT B. MCDUFF |
| | BRYAN A. STEVENSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 01/31/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

CHANDLER, JUSTICE, FOR THE COURT:

¶1.     On March 12, 2009, Dante Lamar Evans was convicted of the murder of his father,

Darold Evans, and was sentenced as an adult to a mandatory term of life imprisonment. The

Court of Appeals affirmed Dante's conviction and sentence. *Evans v. State*, 2011 WL

2323016, at *1 (Miss. Ct. App. June 14, 2011), *reh'g denied* (Sept. 6, 2011). Dante petitioned

this Court for a writ of certiorari concerning six issues: (1) whether the trial court erroneously

refused to permit the jury to consider Dante's theory of imperfect self-defense; (2) whether

the trial court erred in excluding testimony concerning Darold Evans's alleged abuse of Dante

and his mother; (3) whether the trial court erred in refusing funds to hire a post-traumatic-stress-disorder (PTSD) expert; (4) whether the trial court improperly prohibited the jury from considering Dante's age in its deliberations; (5) whether the trial court erred in admitting Dante's statements made to security guards and law-enforcement officers; and (6) whether Dante's life sentence is unconstitutional.

¶2.     This Court granted certiorari on December 15, 2011.  On June 8, 2012, this Court requested supplemental briefing on whether the trial court abused its discretion in denying Dante funds to hire an expert on PTSD and whether that issue would be more appropriately addressed on a petition for post-conviction relief.[1]  Although Dante submits six issues for us to consider today, under Mississippi Rule of Appellate Procedure 17(h), we limit the question for review upon our grant of certiorari, focusing on the third issue.  *Walton v. State*, 998 So. 2d 971, 975 (Miss. 2008).

¶3.     We find that Dante demonstrated an actual need for an expert on PTSD.  Therefore, the trial court abused its discretion in denying funds to hire such an expert.  We reverse the judgment of both the Court of Appeals and the trial court and remand for a new trial.

**FACTS**

¶4.     On April 13, 2007, Dante Evans was arrested for shooting his father, Darold Evans. Dante was fourteen years old at the time of his arrest.  On his videotaped police statement, Dante stated that he and his mother, Juanita Evans, had been victims of his father's abuse. Dante told police that his father had threatened to kill his mother on several occasions and that

---

[1]Both parties agreed that this issue should be addressed in this appeal.

2

he had witnessed his father holding his mother underwater in the bathtub. He also told the police that his father had tried to hit his mother with a car. Dante claimed that his father also had lashed out against him, at one point injuring his eye. Following these events, Dante was hospitalized for depression in 2001, and was diagnosed with PTSD.

¶5. Dante's parents separated in 2006, and he moved with his mother to North Carolina shortly thereafter. After Dante began using drugs and spending time with a gang, his mother sent him to live with his father in Biloxi, Mississippi. In February 2007, Dante moved in with his father. After several weeks of living alone with his father in a Federal Emergency Management Agency (FEMA) trailer, Dante came to Latrice Walker Richardson, the school guidance counselor, and said he had been thinking about killing his father. Richardson then called in another counselor, Ms. Crockett.[2] Dante then stated that he did not want to be in Mississippi and that his father was beating him. The next morning, Dante continued the conversation with Richardson, Crockett, and Cassandra Jones, the school's social worker. Richardson and Crockett informed Jones of their conversation with Dante the day before, and Jones explained to Dante that a parent has the right to discipline his child as long as the parent does not leave a bruise. Dante stated that his father did not leave bruises on him, but that he did push and punch him in the chest and also forbade him from contacting his mother. Jones suggested Dante write to his mother. Dante attempted to write his mother a letter, but it was confiscated because he was writing the letter during class. Dante made several allegations in the letter, including that his father was abusing him.

---

[2]Ms. Crockett's first name does not appear in the record.

¶6.     The school notified Dante's father of the complaint and the letter and scheduled a meeting. When asked if there were any problems at home, Dante's father said he was strict, but that he and his son had a good relationship. Dante's mother called Dante's father during the meeting, and his father handed Dante the phone to speak to his mother.

¶7.     Richardson and Jones met with Dante the next day and noticed that he had a bruise next to his eye. Dante told them that his father had pushed him against the trailer after their meeting the day before. Dante's injuries also were reported to the Department of Human Services (DHS), but after visiting the trailer park, DHS found no reason to intervene.

¶8.     A few weeks later, Darold Evans was found dead from a gunshot wound, and Dante was arrested and charged with murder. Dante explained the following in his videotaped police statement: He removed his father's handgun from a locked toolbox two nights before the shooting. He stated he kept the gun under his pillow for protection from his father's abusive behavior. Dante also told the police he practiced pointing the gun at his father one or two nights before the shooting, and that he had no prior experience with guns. When he pulled the trigger and the gun did not fire, Dante said he "took it as a sign I'm not suppose [*sic*] to be doing it. But today, I tried it again . . . ."

¶9.     On September 5, 2008, in preparation for trial, defense counsel filed its Motion for Expert and Funds to Pay Same. The motion stated that Dante was diagnosed with PTSD as a child and that Dante needed a PTSD expert to assist in the preparation for trial and to testify. The motion identified Dr. Gerald O'Brien as the requested expert and asked for funds totaling no more than $3,000.

4

¶10.   On September 11, 2008, the court held a hearing on the motion for funds.  Defense counsel stated that, pursuant to a prior court order, Dr. Beverly Smallwood had been hired in April 2008 to conduct a pretrial psychological exam on Dante.  Defense counsel emphasized to the court that Dr. Smallwood had been hired for the sole purpose of determining whether Dante was competent to stand trial and whether he was sane at the time of his offense.  Dr. Smallwood's report was introduced as an exhibit and reviewed by the court.  During Dr. Smallwood's investigation, she discovered that Dante had been diagnosed with PTSD in 2001.  In her report, Dr. Smallwood stated that Dante showed symptoms of PTSD, and she also provided likely triggers for Dante's trauma.  These triggers included Dante's living situation and abusive environment.

¶11.   Defense counsel informed the court that, although Dr. Smallwood had identified Dante's history of abuse and his symptoms, she could not provide the type of assistance on PTSD necessary for Dante's defense.  As a result, defense counsel requested that Dante be allowed funds to hire a PTSD expert.  Specifically, defense counsel stated that an expert on PTSD, such as Dr. O'Brien, was necessary for Dante's theory of defense.  When the trial court asked whether Dr. Smallwood could provide the same testimony, defense counsel replied, "No sir.  I have spoken to Dr. Smallwood about that, and she cannot."  Defense counsel further informed the court that Dr. Smallwood had recommended that Dante hire Dr. O'Brien, an expert in the field of PTSD.  At the close of the hearing, the trial court denied Dante's motion for funds to pay for Dr. O'Brien, stating that Dante, Dr. Smallwood, and other witnesses could testify regarding Dante's abusive family history.

5

¶12. Dante's trial commenced in Harrison County Circuit Court on March 11, 2009. At trial, Dante requested a jury instruction for his theory of imperfect self-defense. The trial court refused to offer such an instruction, finding that Dante had failed to present enough evidence to support his theory.

¶13. Dante was convicted of murder on March 12, 2009. On May 21, 2009, the court denied Dante's Motion for a New Trial. He then filed a timely Notice of Appeal on May 27, 2009. The Court of Appeals issued an *en banc* decision on June 14, 2011, in which six judges affirmed Dante's conviction and three judges dissented. *Evans*, 2011 WL 2323016, at \*10. In regard to Dante's requested funds for an expert, the majority held the funds were properly denied because the expert testimony was intended to support Dante's theory of imperfect self-defense, which was not supported by the evidence. *Id*. However, the dissent argued that the case should be reversed and remanded based on the trial court's denial of Dante's request for an expert on PTSD because such testimony was necessary for his defense. *Id*. at \*10 (Carlton, J., dissenting).

**DISCUSSION**

¶14. This Court must determine on a case-by-case basis whether the denial of expert assistance for an accused is in fact prejudicial to the assurance of a fair trial. *Davis v. State*, 374 So. 2d 1293 (Miss. 1979). "The majority of state and federal jurisdictions express a similar view and hold that relief will be granted only where the accused demonstrates that the trial court's abuse of discretion is so egregious as to deny him due process and his trial was thereby rendered fundamentally unfair." *Johnson v. State*, 476 So. 2d 1195, 1203 (Miss. 1985).

6

¶15.    Dante argues that the defense theory of imperfect self-defense required an expert on PTSD and that the trial court's refusal of funds for such an expert was an abuse of discretion and reversible error.  Dante further argues that he demonstrated an actual need for an expert in PTSD and that the trial court's denial of funds was a denial of due process.  We agree.

## I.    DANTE DEMONSTRATED AN ACTUAL NEED FOR AN EXPERT ON POST-TRAUMATIC STRESS DISORDER.

¶16.    A trial court's decision on a motion for experts is reviewed for abuse of discretion.  *Grayson v. State*, 806 So. 2d 241, 254 (Miss. 2001) (citation omitted).  This Court has acknowledged that there are times when "the state in fairness should be required to pay the cost of an expert needed by the defense to insure a fair trial for an indigent accused . . . ."  *Ruffin v. State*, 447 So. 2d 113, 118 (Miss. 1984).  Further, it would be an abuse of discretion for a trial court to deny funds for an expert if the defendant has provided concrete reasons showing a substantial need for such assistance.  *Hansen v. State*, 592 So. 2d 114, 125 (Miss. 1991) (citations omitted).

¶17.    We find that Dante satisfied his burden to show that an expert in PTSD was necessary for his defense.  Dr. Smallwood was appointed solely to evaluate Dante and to determine his competency to stand trial.  Although Dr. Smallwood ultimately gave her opinion that Dante was competent to stand trial, she informed defense counsel that she would not be able to testify as to how PTSD may affect a person's state of mind because she lacked expertise in that field.  Therefore, Dante did not have an expert who could assist in the preparation of his defense, which was that his PTSD affected his state of mind at the time of the shooting.  Defense counsel informed the court that this testimony was necessary for Dante's theory of

defense, reiterating that an expert in PTSD could assist the jurors in understanding the mindset of a child suffering from PTSD. Defense counsel also informed the court that Dr. Smallwood "recommended that [the defense] hire Dr. O'Brien, who is . . . very highly qualified . . . ."

¶18. At the hearing, defense counsel also provided specific findings by Dr. Smallwood to show that expert testimony on PTSD was essential to assist the jury to understand the evidence. *See* M.R.E. 702. Dr. Smallwood's report stated that, in 2001, Dante had been diagnosed with PTSD at the Moses Cone Hospital in Greenville, North Carolina. Dr. Smallwood's report also revealed that Dante exhibited the following symptoms of PTSD: fear and a sense of helplessness, agitated behavior, outbursts of anger, difficulty concentrating, and intrusive memories of past abuse. Defense counsel reiterated that, while Dr. Smallwood stated she could *recognize* the symptoms of PTSD, she did not have the expertise to explain to a jury PTSD's effects on a person's mental state.

¶19. The role of an expert witness is to "ideally assist lay jurors, who generally have no training in psychiatric matters, to make a sensible and educated determination about the mental condition of the defendant at the time of the offense." *Ake v. Oklahoma*, 470 U.S. 68, 80-81, 105 S. Ct. 1087, 1095, 84 L. Ed. 2d 53 (1985). Such experts can "translate a medical diagnosis into language that will assist the trier of fact, and therefore offer evidence in a form that has meaning for the task at hand." *Id*. at 80. In denying the motion for funds, the trial court claimed that Dante and other witnesses could testify about Dante's abusive history. However, defense counsel requested Dr. O'Brien because Dr. Smallwood and lay witnesses could *not* testify to the symptoms and characteristics of a person suffering from PTSD. Dante needed an expert in PTSD to "ideally assist lay jurors . . . to make a sensible and educated

8

determination about the mental condition of the defendant at the time of the offense." ***Ake,*** 470 U.S. at 80-81. This Court recognizes the importance of expert testimony in regard to the psychological effects of PTSD. *See, e.g.*, ***Norris v. State***, 490 So. 2d 839, 843 (Miss. 1986) (allowing expert testimony regarding effect of PTSD on war veteran in aggravated-assault case).

¶20.    Defense counsel explained to the court that Dr. Smallwood is not an expert in PTSD. Defense counsel also presented evidence of Dante's medical diagnosis of PTSD. Finally, defense counsel explained that an expert in PTSD was necessary for Dante to prepare his theory of defense. We find that Dante met his burden of showing an actual need for an expert who could testify to the psychological effects of PTSD. Therefore, we find that the trial court's denial of funds for Dante to hire Dr. O'Brien was an abuse of discretion.

### II. THE TRIAL COURT'S DENIAL OF FUNDS FOR AN EXPERT ON POST-TRAUMATIC STRESS DISORDER VIOLATED DANTE'S DUE-PROCESS RIGHTS.

¶21.    Dante's primary theory at trial was imperfect self-defense. Dante was required to show that he acted without malice and under a bona fide belief that his actions were necessary to avoid death or bodily harm. ***Wade***, 748 So. 2d at 775 (citation omitted). Under this theory, the jury must determine whether Dante's actions were "subjectively, in his . . . own mind, reasonable . . . ." ***Cook v. State***, 467 So. 2d 203, 207 (Miss. 1985). Dante lacked a necessary component to his defense – an expert who could explain to a jury how a child's state of mind may be affected when suffering from PTSD. This lack of expert testimony deprived the jury of the information needed to properly understand the evidence regarding whether Dante's PTSD affected his mental state at the time of the shooting.

¶22. Under the theory of imperfect self-defense, a jury would need to determine whether Dante held, *in his mind*, a perception of fear that he was in danger of "death or great bodily harm" while living with his father. *Wade*, 748 So. 2d at 775. Dante's diagnosis of PTSD and abusive family history were the factual basis for his theory. At the hearing on the motion for funds, defense counsel specifically stated that Dr. O'Brien was needed so the defense could explain Dante's theory of imperfect self-defense to the jury. The trial court's denial of funds for Dr. O'Brien denied Dante the opportunity to offer a fact-based defense.

¶23. This case presents unique circumstances. We do not hold today that a defendant who is simply displeased with his expert or experts provided by the State has grounds for reversal. As previously stated in *Ake*, an indigent defendant does not have a constitutional right to hire an expert of his or her liking or to receive funds to hire his own. *Ake*, 470 U.S. at 83. Rather, our holding is narrowly tailored to the particular facts of this case – in order to present his defense theory, Dante needed a PTSD expert who could explain to a jury how PTSD would affect a child's state of mind. Dante was entitled to an *adequate* expert to assist in the preparation of his defense.

¶24. The trial court abused its discretion in denying Dante funds to hire a PTSD expert. This Court has stated that "[a]n indigent's right to defense expenses is conditioned upon showing that such expenses are needed to prepare an adequate defense." *Hunt v. State*, 687 So. 2d 1154, 1161 (Miss. 1996). We find that Dante met his burden and that the court's denial of his request violated Dante's due-process rights. *See Johnson*, 476 So. 2d at 1203 (stating that the Due Process Clause, at times, requires the authorization of certain experts).

10

Therefore, this Court finds that Dante's conviction should be reversed and that this case should be remanded to the trial court for further proceedings consistent with this opinion.

## CONCLUSION

¶25.    We find that the trial court abused its discretion in denying Dante funds to hire an expert in PTSD to assist Dante in the preparation of his defense.  And we find that the Court of Appeals erred in affirming the verdict and sentence.  We reverse the judgments of both the Court of Appeals and the trial court.  Therefore, we remand this case to the Harrison County Circuit Court for a new trial consistent with this opinion.

¶26.    **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, PIERCE AND COLEMAN, JJ., CONCUR.  KING, J., NOT PARTICIPATING**.