IRVING, J.,
for the Court:
¶ 1. Delynn Delshae Pittman was convicted of aggravated assault by a jury in the Leake County Circuit Court and was sentenced by the circuit court to serve eight years in the custody of the Mississippi Department of Corrections, with four years suspended and five years of post-release supervision. Feeling aggrieved, Pittman appeals and asserts that the circuit court erred in allowing an improper leading question and in allowing Officer Michael Harper to testify regarding Pittman’s body language during an interview.
¶ 2. We find no reversible error and consequently affirm the circuit court’s judgment.
FACTS
¶ 3. Pittman shot Roshea McCoy multiple times. McCoy survived, and Pittman was charged with and convicted of aggravated assault as a result of the shooting.
¶ 4. It is not clear from the record what prompted Pittman’s attack. There was evidence indicating that both McCoy and Pittman had attended a party in Leake County, although they had no altercation of any kind at the party. McCoy returned home after the party. Sometime thereafter, Pittman drove to McCoy’s home. Pitt *1231 man did not go to McCoy’s home alone; Adi’ian Calhoun was in the front seat with Pittman, and Quincy Boyd was in the backseat of the vehicle. According to Quincy and McCoy, McCoy approached the vehicle and exchanged small talk with its occupants. McCoy testified that Pittman exited the vehicle, held a firearm in front of McCoy’s face, and demanded that McCoy “give it up.” McCoy thought that Pittman was joking and began to walk away.
¶ 5. McCoy testified that as he began to retreat from the vehicle, Calhoun exited the vehicle and physically assaulted McCoy. McCoy stated that as Calhoun held onto him, Pittman began firing his gun. Two shots had hit McCoy when McCoy’s girlfriend, Sally Boyd, exited McCoy’s home. Sally had heard the struggle and retrieved a gun before coming outside. Sally fired several shots in the air; she testified that the shots had no effect on the struggle in the yard, but McCoy testified that he believed that Sally’s appearance caused Calhoun to disengage and flee. According to McCoy, when Calhoun released him, he fled to some trees at the back of his property. McCoy testified that Pittman continued to fire as McCoy fled, and a third bullet entered and exited McCoy’s arm during his flight to the trees. McCoy hid in the trees until Pittman left, and eventually crawled back toward his house. Sally took McCoy to a hospital in Jackson, and he was released the following morning.
¶ 6. Quincy, who apparently remained in the backseat during the incident, testified about the shooting. He indicated that it was dark, but that he was able to see McCoy and Calhoun fighting; he also saw Pittman with a firearm, which Pittman fired multiple times. Quincy did not realize that McCoy had been shot. During his direct testimony, the prosecutor asked Quincy, “Was Adrian [Calhoun] trying to grab hold of Roshea [McCoy]?” Pittman’s attorney objected to the question as leading, but was overruled. At the time of Quincy’s testimony, McCoy had already testified that, during the confrontation, Calhoun grabbed him. After the objection was overruled, Quincy responded: “It was kind of dark and really you can’t see nothing, but they say he was trying to get in his pocket.”
¶ 7. Pittman gave a statement to law enforcement wherein he essentially denied intentionally shooting McCoy. Pittman told the officers that he and McCoy had gotten into an argument and ended up fighting over a firearm that McCoy had in his possession. Pittman stated that the gun went off during the struggle. Officer Harper testified at trial about Pittman’s statement, which was not recorded. According to Officer Harper, Pittman demonstrated how he and McCoy had engaged in a hand-to-hand struggle over the gun. Pittman claimed that the gun was on the ground and that they were struggling over it when the gun went off. Officer Harper questioned how that statement could be true, since McCoy was shot in the buttocks. Officer Harper testified that when he asked Pittman that question, Pittman slumped and seemed to have the “air” taken out of him. The prosecutor tried to get Officer Harper to testify about what the slump indicated, but McCoy’s attorney objected. The objection was sustained.
¶ 8. During cross-examination, Pittman’s attorney questioned Officer Harper about whether he had training as a “kinesthesiol-ogist.” [1] Officer Harper responded that he had received formal training in reading body language during interviews. During redirect, the prosecutor asked Officer Harper again about what he believed Pittman’s slump indicated. Pittman’s attorney ob *1232 jected, but the circuit court found that Pittman had invited the line of questioning during cross-examination. Officer Harper then testified that the slump appeared to him to be a “confession slump.” Pittman never sought to voir dire Officer Harper as to his qualifications.
¶ 9. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Leading Question

¶ 10. Pittman argues that the circuit court erred in overruling his objection to the prosecutor’s question to Quincy. The Mississippi Supreme Court has defined a leading question as “one that suggests to the witness the specific answer desired by the examining attorney.” Tanner v. State, 764 So.2d 385, 405 (¶ 58) (Miss.2000) (quoting Clemons v. State, 732 So.2d 883, 889 (¶25) (Miss.1999)). Although leading questions may be improper on direct examination, “[tjrial courts are given great discretion in permitting the use of such questions, and unless there has been a manifest abuse of discretion resulting in injury to the complaining party, we will not reverse the decision.” Id. (quoting Clemons, 732 So.2d at 889 (¶ 25)).
¶ 11. The question of which McCoy complains was: “Was Adrian [Calhoun] trying to grab hold of Roshea [McCoy]?” At the outset, we note that this question does not necessarily suggest a certain response. At worst, the question prompted Quincy to testify that Calhoun was attempting to grab McCoy.
¶ 12. Even if the question were leading, we find no reason to reverse the circuit court’s judgment on this ground. The answer that the State was attempting to elicit from Quincy had already been testified to by McCoy. Therefore, any error flowing from the question was harmless at worst. Additionally, Quincy answered the question and indicated that it was too dark to tell whether Calhoun was attempting to grab McCoy. Since Quincy did not give the answer that the State was allegedly trying to elicit, no injury could have resulted to Pittman as a result of the question and answer. Finally, it is within the circuit court’s discretion to allow leading questions, and we find no manifest abuse of that discretion.
¶ 13. Therefore, there is no merit to Pittman’s contention of error.

2. Officer Harper’s Testimony

¶ 14. Pittman complains that Officer Harper improperly offered expert testimony that Pittman’s body language indicated a “confession slump,” even though Officer Harper was never offered as an expert. We review the circuit court’s decision to allow Officer Harper’s testimony under an abuse-of-discretion standard. Williams v. State, 35 So.3d 480, 488 (¶ 25) (Miss.2010). “We will not reverse unless the trial court applied an improper legal standard resulting in prejudice to” Pittman. Id. (citing Ford v. State, 975 So.2d 859, 865 (¶ 16) (Miss.2008)).
¶ 15. While Officer Harper was not offered as an expert, Pittman’s attorney questioned Officer Harper about his training. Officer Harper then explained that he had been trained in observing and identifying body language. Pittman did not seek to further voir dire Officer Harper, and even after it became clear that the circuit court was going to allow Officer Harper to testify about Pittman’s body language, Pittman still did not request an opportunity to further question Officer Harper about his experience and training. Therefore, there was no error in allowing the testimony. Furthermore, even if it had been error to allow the testimony, it would be harmless at worst due to the *1233 overwhelming weight of the evidence against Pittman. Walton v. State, 998 So.2d 971, 976 (¶ 14) (Miss.2008).
¶ 16. This contention of error is also without merit.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FOUR YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. We assume the attorney meant kinesiologist.