# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01141-COA

**CRAYTONIA LATROY BADGER A/K/A**             **APPELLANT**
**CRAYTONIA BADGER A/K/A CRAYTONIA L.**
**BADGER**

**v.**

**STATE OF MISSISSIPPI**                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/26/2017 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON JR. |
| COURT FROM WHICH APPEALED: | AMITE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/28/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.

### CARLTON, J., FOR THE COURT:

¶1.    Craytonia Badger appeals his conviction for burglary of a building and sentence of seven years in the custody of the Mississippi Department of Corrections (MDOC). On appeal, Badger claims that his conviction is unlawful because his constitutional rights were violated when the trial judge denied him the opportunity to recall a witness to testify. While the transcript shows that Badger and his counsel were given an opportunity to question the witness during the State's case-in-chief, Badger claims that because the trial court denied him the ability to properly rebut the witness's testimony later in the trial, the State subjected him

to "trial by ambush." Finding no error, we affirm the trial court's judgment.

**FACTS**

¶2. In the early hours of October 22, 2014, the Gloster Police Department received a call about a burglary at Gloster Drug Store (also known as Dixon's Discount Pharmacy). After officers assessed the scene, they received a call from the police department in Ferriday, Louisiana, informing them that Lieutenant Lee Williams of the Ferriday Police Department stopped Badger's vehicle that same evening going northbound on Highway 425. During the traffic stop, Lieutenant Williams conducted a search of Badger's vehicle where he discovered prescription drug bottles from Gloster Drug Store in Badger's possession.

¶3. At trial, Lieutenant Williams testified that he conducted a traffic stop after observing that Badger's vehicle did not have a license plate. Lieutenant Williams stated that although he did eventually notice a temporary license plate in the rear window, Badger could not produce a driver's license when requested. Badger did, however, produce a Mississippi identification card. Lieutenant Williams performed a warrant check and discovered two outstanding warrants for Badger's arrest. Lieutenant Williams then arrested Badger for driving without a license and having at least one outstanding warrant for his arrest.

¶4. Lieutenant Williams advised Badger of his *Miranda*[1] rights and asked to search the vehicle, and Lieutenant Williams testified that Badger consented to the search. The search produced evidence connecting Badger to the break-in at Gloster Drug Store, including a maul hammer (that Gloster police believed to be used in the burglary), blood-stained shoes and

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

clothing, and bottles of prescription drugs. Lieutenant Williams testified that his discovery of the prescription drug bottles led him to contact the Amite County Sheriff's Department about having Badger in his custody.

¶5.     Joseph Heflin, a forensic DNA analyst with the Mississippi Forensic Laboratory, testified at trial that he performed tests on the blood and DNA samples recovered from Gloster Drug Store and Badger's car. Heflin testified that Badger's blood matched the blood on the hammer found in his car and the blood from the pharmacy within a reasonable degree of scientific certainty.

¶6.     On April 13, 2015, a grand jury indicted Badger for the crime of burglary of a storehouse. The matter went to trial July 25, 2017, and the jury returned a guilty verdict. On July 26, 2017, the trial court sentenced Badger as a habitual offender[2] to serve seven years in the custody of the MDOC. Because of his habitual-offender status, he is ineligible for parole or probation. After the trial court denied his posttrial motions, Badger filed his notice of appeal on August 15, 2017.

## STANDARD OF REVIEW

¶7.     The Mississippi Constitution ensures that those accused in a criminal proceeding have the right to confront witnesses against them. Miss. Const. art. 3, § 26. While criminally accused individuals have that right, the law clearly recognizes a trial court's authority "to exercise reasonable control over the mode and order of interrogating witnesses and

---

[2] The trial court held a separate hearing to determine Badger's habitual-offender status, and found that Badger constituted a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2015).

presenting evidence so as to make the interrogation and presentation effective for the ascertainment of the truth." *Robinson v. State*, 40 So. 3d 570, 577 (¶27) (Miss. Ct. App. 2009); *see also* M.R.E. 611(a). We recognize that "[i]t is within the sound discretion of the trial court to permit a witness to be recalled to the stand once the witness has completed his testimony." *Clark v. State*, 233 So. 3d 832, 847 (¶26) (Miss. Ct. App. 2017).

## DISCUSSION

¶8. On appeal, Badger's sole assignment of error is that the trial court violated his right to examine a witness necessary for his defense. Badger contends that during the trial, Lieutenant Williams's testimony produced new evidence about a potential video recording of the traffic stop. Our review of the record indicates that the defense, not the State, elicited the information from Lieutenant Williams during cross examination. Badger's argument hinges on the following testimony from Lieutenant Williams:

> Q: Do y'all have body cameras over there?
>
> A: Yes, sir, we do.
>
> Q: Was it on?
>
> A: I can't remember, sir. To be honest with you, I can't remember.
> I'm sure it was.
>
> Q: Do you have a video of that?
>
> A: Sir, it's been so long ago that I just can't remember. Honestly,
> I can't remember.

¶9. After concluding cross examination, defense counsel tendered the witness and alerted the trial court to the possibility of calling Lieutenant Williams at a later point in the trial. The

4

trial court responded as follows:

> THE COURT: This is your cross-examination. Why would you need to question him later?
>
> [Defense attorney]: Well, we may find evidence that would support –
>
> THE COURT: I'll take that up later. It's possible you can call him as a witness. We'll see.

¶10. After the State rested, defense counsel moved for a directed verdict, which the trial court denied. Defense counsel then requested that the trial court recall Lieutenant Williams to the courtroom to testify, claiming that inconsistencies existed between his testimony and that of officers from the Amite County Sheriff's Department and Mississippi Bureau of Narcotics. The State informed the trial court that it would be very difficult to recall Lieutenant Williams, explaining that he was on disability leave and lived a great distance away. The trial court agreed that he "remember[ed] something about the possibility of recalling him," but found that no basis existed to do so because Lieutenant Williams "was up here available and fully questioned yesterday." Badger responded, "There's basis because [Lieutenant Williams] . . . testified about the body camera" and also that he took pictures of evidence he found in the trunk of Badger's vehicle, but none of the evidence actually appeared in the photographs. The trial court ruled as follows:

> [T]hese are all matters that could have been inquired of the witness when he was here present yesterday. He's an out of state witness on disability, and the State advises that he's not available today. You will be allowed to call the other two witnesses. These are matters that could have been inquired of him yesterday.

¶11. Our review of the record indicates that neither Badger nor his counsel requested that

the trial court retain Lieutenant Williams for later questioning or to instruct Lieutenant Williams that he remained under subpoena and should not leave in case defense counsel recalled him. The record shows that the State subpoenaed Lieutenant Williams to testify as a witness at trial. Defense counsel failed to subpoena Lieutenant Williams before trial and also failed to request a subpoena instanter for him after his trial testimony. Furthermore, neither defense counsel nor Badger requested a continuance to investigate the "new evidence" heard during Lieutenant Williams's cross examination. Nonetheless, Badger relies heavily on the principle of "trial by ambush" to support his appeal. Badger argues that Lieutenant Williams's disability status did not impede his ability to testify the day before and that the trial court never dismissed him.

¶12.    The Mississippi Supreme Court has discussed cases where counsel is unable to fully prepare a defense because the prosecution fails to disclose certain facts or witnesses. Badger cites two specific cases, *Harris v. General Host Corp.*, 503 So. 2d 795, 796-97 (Miss. 1986) and *Fulks v State*, 18 So. 3d 803, 805-07 (¶¶3-14) (Miss. 2009), to bolster his argument. Badger's brief cherry picks the applicable law of this State and compares his trial to scenarios where defendants are not given a fair trial because of surprise evidence. Our review of the law, however, identifies that Badger's claims are not as deeply rooted in the law as he contends.

¶13.    In *Harris*, an expert witness who was not originally identified in discovery testified at trial, to the surprise of the defense. *Harris*, 503 So. 2d at 796. The supreme court found that this put the defense at a disadvantage because it could not properly prepare to rebut the

6

testimony of an expert witness that the defense had no knowledge of before the morning of trial. *Id*. at 798.

¶14. Additionally, Badger believes the trial court subjected his counsel to conditions similar to the facts in *Fulks*. Although *Fulks* did articulate the supreme court's distaste for unsavory prosecutorial tactics, like revealing inculpatory evidence on the eve of trial, it does not fit the facts before us. *Fulks*, 18 So. 3d at 805 (¶9). Unlike the case before us, the defense counsel in *Fulks* moved for a continuance upon the State's revelation of new evidence, and the trial court improperly denied the motion. *Id*. at 807 (¶14).

¶15. It is clear from our review of the law that Badger wrongly parallels his treatment at trial to *Harris* and *Fulks*. The record reveals that, unlike *Harris*, defense counsel knew that Lieutenant Williams arrested Badger and that the State subpoenaed Lieutenant Williams to testify at court. Defense counsel failed to request that the trial court retain Lieutenant Williams or instruct him that he remained under subpoena and should not leave in case defense counsel recalled him. The supreme court has addressed the duty of counsel to ensure witnesses are under subpoena many times before. Specifically, counsel has a duty to show that he or she is "either under process or a reasonable effort has been made to serve him or her with a subpoena." *Triplett v. State*, 666 So. 2d 1356, 1359 (Miss. 1995) (quoting *Eslick v. State*, 238 Miss. 666, 673, 119 So. 2d 355, 359 (Miss. 1960)). To blatantly refuse to seek all avenues to ensure a witness will appear to testify at trial is a failure by the defense. *Id.* Furthermore, our stringent review of the record points to defense counsel considering the possibility of the existence of the video in trial preparation by way of cross examination

questions.

¶16. After our review of the record, we find no merit to Badger's argument that he was subjected to trial by ambush or that the trial court erred by refusing to allow Badger to recall Lieutenant Williams after the State's case-in-chief. We therefore affirm the trial court's judgment.

¶17. **AFFIRMED.**

**LEE, C.J., IRVING, P.J., BARNES, FAIR, WILSON AND GREENLEE, JJ., CONCUR. TINDELL, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., AND TINDELL, J.**

**WESTBROOKS, J., CONCURRING IN PART AND IN RESULT:**

¶18. I agree with the majority's decision to affirm Badger's burglary conviction. I write separately because I find that the trial court abused its discretion in denying Badger the opportunity to recall a witness to testify. Nonetheless, the overwhelming weight of the evidence supports the jury's verdict, and therefore the trial court's error was harmless and does not require reversal of the conviction.

¶19. During trial, after cross-examinations, Badger's defense counsel requested an opportunity to recall Lieutenant Williams at a later point in the trial. The trial court responded, "I'll take that up later. It's possible you can call him as a witness. We'll see." The request to question Lieutenant Williams came after the defense learned of possible body-camera footage and photographs of Badger's trunk from the time of his arrest. The trial court ruled that:

[T]hese are all matters that could have been inquired of the witness when he

8

was here present yesterday. He's an out of state witness on disability, and the state advises that he's not available today. You will be allowed to call the other two witnesses. These are matters that could have been inquired of him yesterday.

¶20. The Mississippi Court of Appeals has held that a trial judge has not abused his discretion in denying a defendant's request to recall a witness when the defendant has offered no evidence that questioning the witness again would provide any additional, helpful information to the jury. *See Clark v. State*, 233 So. 3d 832, 848 (¶27) (Miss. Ct. App. 2017). Here, Badger's defense counsel purported he was not aware of the body-camera footage or photographs from the arrest before trial. Questioning Lieutenant Williams again may have provided clarity on the facts in dispute including whether Badger gave the Lieutenant permission to search his vehicle.

¶21. Although the trial court's exercise of discretion to deny permission to recall Lieutenant Williams was unreasonable, I find the error to be harmless in this case. The Mississippi Supreme Court has held that:

> Constitutional error does not automatically require reversal of a conviction. However, before a constitutional error is determined to be harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. An error may be found by this Court to be harmless beyond a reasonable doubt only where the weight of the evidence against the accused is overwhelming. A harmless-error determination requires an examination of the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt.

*Walton v. State*, 998 So. 2d 971, 976 (¶14) (Miss. 2008) (citations and internal quotation marks omitted). Badger did not make an effort to subpoena Lieutenant Williams and ensure his presence during his case-in-chief. He failed to request a continuance regarding any new

evidence. Lastly, the evidence showed that the DNA of Badger's blood matched the blood found at the crime scene and that the video footage of clothing matched the clothing found in his car. He was caught with a hammer with glass and concrete on it along with prescription drugs taken from the drugstore. The jury's verdict was not contrary to the overwhelming weight of the evidence, and therefore the trial court's error was harmless.

**GRIFFIS, P.J., AND TINDELL, J., JOIN THIS OPINION.**